[No. S125590. July 16, 2007.]

THOMAS M. SIEBEL, Plaintiff and Appellant, v.
CAROL L. MITTLESTEADT et al., Defendants and Respondents.

COUNSEL

Blecher & Collins, Maxwell M. Blecher, Ralph C. Hofer; Greines, Martin, Stein & Richland, Robin Meadow and Laura Boudreau for Plaintiff and Appellant.

DLA Piper Rudnick Gray Cary US, Mark H. Hamer and Jarod M. Bona for National Federation of Independent Business Legal Foundation as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Tony J. Tanke, Tony J. Tanke; Law Offices of Gary L. Simms, Gary L. Simms; Roeca, Haas, Hager, Russell S. Roeca, Daniel W. Hager; Murphy, Pearson, Bradley, Feeney, Timothy J. Halloran and Christine A. Huntoon for Defendants and Respondents.

OPINION

**CORRIGAN, J.**—Here we consider what constitutes a favorable termination of a lawsuit as a predicate for a subsequent malicious prosecution action. We hold that, in this context, a postjudgment settlement constitutes a favorable termination when the malicious prosecution plaintiff received a favorable judgment in the underlying action, and settled without giving up any portion of the judgment in his favor.

### FACTUAL AND PROCEDURAL BACKGROUND

Initially, Debra Christoffers sued her employer, Siebel Systems, Inc. (SSI), and the company's chief executive officer, Thomas M. Siebel. Christoffers had been hired by SSI as a sales director. She asserted that Siebel had induced her to leave her previous employer by falsely promising to compensate her with large commissions and lucrative stock options. Once she joined SSI, Christoffers alleged, Siebel and the company discriminated against her because of her gender, refused to pay commissions, and fired her to avoid paying both commissions and vested stock options.

Christoffers alleged eight causes of action against Siebel individually. The first six were based on various assertions of gender discrimination and wrongful termination, and were disposed of by demurrer, summary adjudication, or voluntary dismissal before trial.[1] It is these six causes of action that Siebel later relied upon to bring his malicious prosecution suit. Christoffers went to trial on the two remaining fraud allegations against Siebel individually, and on her allegations against SSI for fraud, failure to pay compensation and wrongful termination to avoid those payments.

Christoffers failed to prove fraud or wrongful termination. The jury specifically found that SSI had fired Christoffers because it honestly believed that her job performance was deficient, that neither Siebel nor SSI had made a promise it had not intended to keep, and that neither defendant had concealed a material fact. The jury did find that SSI had failed to pay Christoffers substantial commissions. Accordingly, it awarded her $233,662.25 in damages and prejudgment interest. On SSI's cross-complaint, the jury found that Christoffers had not appropriated any trade secrets, but that she was liable for breach of contract, breach of duty of loyalty, and conversion. It went on to find, however, that SSI had failed to prove that it had suffered any damages.

---

[1] The first six counts of Christoffers' complaint were disposed of in the following manner in favor of Siebel:

Count I: Wrongful termination to avoid paying compensation. Summary adjudication granted.

Count II: Sexual discrimination in violation of the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.). Demurrer granted.

Count III: Sexual discrimination in violation of the California Constitution. Voluntarily dismissed by Christoffers.

Count IV: Wrongful termination in violation of the public policy against sexual discrimination. Summary adjudication granted.

Count V: Violation of Labor Code section 970 (inducing Christoffers to move for purposes of employment and wrongful termination of this statute). Summary adjudication granted.

Count VI: Wrongful termination in violation of Labor Code section 970. Summary adjudication granted.

SSI and Siebel moved for attorney fees under Government Code section 12965 arguing that Christoffers's sex discrimination claims had no foundation in law or fact and were brought in bad faith. The company's motion was denied. As the prevailing party on her unpaid-compensation claim against SSI, Christoffers was awarded costs and attorney fees attributable to that portion of the action. (Lab. Code, § 218.5.) Because Christoffers had failed to recover from Siebel personally, he was granted his litigation costs.

All parties appealed, but later agreed to settle the case. Under the settlement terms, SSI agreed to pay Christoffers approximately 86 percent of the damages and costs she had been awarded. Christoffers agreed to pay Siebel's court-awarded litigation costs. The parties also agreed that Christoffers, and her attorneys, E. Rick Buell II and Carol L. Mittlesteadt, would release Siebel, SSI, and their attorneys from any liability or obligations arising from the case. Siebel, SSI, and their attorneys released Christoffers, but *not* her attorneys, Buell and Mittlesteadt (collectively, defendants.) The agreement specifically provided that it did not modify "the final termination of the Action entered in favor of Siebel for purposes of pursuing claims against Buell or Mittlesteadt, or otherwise prevent Siebel from pursuing any claims against Buell or Mittlesteadt" based on the underlying judgment.

On October 5, 1999, pursuant to the settlement agreement, the parties voluntarily dismissed their appeals. In July 2000, Siebel, acting as an individual, filed this lawsuit against Buell and Mittlesteadt for malicious prosecution. According to the complaint, upon associating in the case as counsel, Buell had advised Mittlesteadt and Christoffers that the sex discrimination claims were unfounded and should be dropped. He also allegedly told Siebel and SSI's counsel on several occasions that he believed these allegations were "bogus." Nevertheless, the complaint alleged, Buell remained as counsel in the case, then pursued the claims solely to force a settlement. Likewise, Siebel alleged Mittlesteadt knew that the charges were fabricated to extract a settlement using SSI's pending initial public offering as leverage. The complaint also alleged Mittlesteadt had sued Siebel personally to coerce him into a prompt settlement, rather than risk creating an unfavorable reputation in the industry and impair SSI's ability "to recruit and employ talented female personnel."

Siebel further noted that five of Christoffers's first six causes of action had been resolved by pretrial court rulings. Siebel alleged Christoffers voluntarily dismissed the remaining third cause of action before trial, because her counsel had "recognized that the claim was devoid of merit and that a judgment or decision in favor of Siebel was inevitable." Siebel sought both punitive and compensatory damages.

Defendants moved for summary judgment, urging: (1) Siebel could not prove malicious prosecution because there had been no favorable termination; (2) public policy required dismissal because defendants would not be able to defend the lawsuit without violating the attorney-client privilege; and (3) Siebel could not demonstrate that defendants lacked probable cause for prosecuting the underlying action.

The trial court granted defendants' motion on the first ground, did not reach the remaining grounds, and entered judgment for defendants.

The Court of Appeal reversed, concluding that Siebel had obtained a favorable termination.[2]

## Discussion

■ To establish a cause of action for malicious prosecution, a plaintiff must demonstrate that the prior action (1) was initiated by or at the direction of the defendant and legally terminated in the plaintiff's favor, (2) was brought without probable cause, and (3) was initiated with malice. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341 [9 Cal.Rptr.3d 97, 83 P.3d 497] (*Casa Herrera*).)

■ Malicious prosecution actions have traditionally been disfavored as potentially chilling the right to pursue legal redress and report crime. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872 [254 Cal.Rptr. 336, 765 P.2d 498].) However, we have noted that this principle " 'should not be employed to defeat a legitimate cause of action' or to 'invent[] new limitations on the substantive right, which are without support in principle or authority.' [Citations.]" (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 966 [12 Cal.Rptr.3d 54, 87 P.3d 802].) Thus, malicious prosecution suits are not barred simply because they are disfavored. (*Casa Herrera, supra,* 32 Cal.4th at p. 349.) As we have also observed, "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. . . . [¶] The judicial process is adversely affected . . . not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals '. . . as instruments with which to maliciously injure their fellow men.' [Citation.]" (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50–51 [118 Cal.Rptr. 184, 529 P.2d 608], fn. omitted.) "[W]hen *the litigation is groundless and motivated by malice* the balance tips in favor

---

[2] The Court of Appeal also held that the wrongful termination claims contained in the first, fourth and sixth causes of action asserted against Siebel lacked probable cause. Our review is limited to the favorable termination element of a malicious prosecution claim.

of the policy of redressing the individual harm inflicted by that litigation." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 695 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

Here, the Court of Appeal held that Siebel obtained a favorable termination because the settling parties did not stipulate to a *new judgment* but agreed instead to dismiss their appeals and allow the *existing judgment* to become final. " 'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution].' [Citation.] Thus, '[i]t is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor.' [Citation.]" (*Casa Herrera, supra,* 32 Cal.4th at p. 341.)

■ To determine whether a party has received a favorable termination, we consider " 'the judgment as a whole in the prior action . . . .' [Citation.]" (*Casa Herrera, supra,* 32 Cal.4th at p. 341.) Victory following a trial on the merits is not required. Rather, " 'the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit.' [Citation.]" (*Id.* at p. 342.)

Defendants' primary contention is that the Court of Appeal failed to apply what they term the "settlement rule" set forth in *Ferreira v. Gray, Cary, Ware & Freidenrich* (2001) 87 Cal.App.4th 409 [104 Cal.Rptr.2d 683] (*Ferreira*). Defendants' reliance on *Ferreira* is misplaced.

In *Ferreira,* Frank Ferreira sued Debra Rushing, Rushing's mother, and her sister, seeking the return of gifts he had given Rushing during their failed romance. (*Ferreira, supra,* 87 Cal.App.4th at p. 411.) Defendants hired the law firm of Gray, Cary, Ware & Freidenrich (Gray Cary) and cross-complained against Ferreira for battery, assault, intrusion into private affairs, unauthorized wiretaps, eavesdropping, stalking, false imprisonment, intentional and negligent infliction of emotional distress, conversion and trespass to chattel. (*Id.* at pp. 411–412.) A jury found for Rushing on her conversion claim, but awarded no damages. It also found in favor of Rushing's mother on her wiretapping and emotional distress claims, awarding $500 in damages. The jury found for Ferreira on the remainder of the claims and cross-claims and awarded $75,982 in damages. (*Id.* at p. 412.) The parties settled after entry of judgment. Terms of the subsequent settlement provided that Ferreira prevailed on certain claims and was awarded damages, but that he would accept $1 from each of the three opposing parties in satisfaction of the judgment. In exchange, Rushing and her family members agreed they would not appeal. An *amended judgment* reflecting the terms of the settlement was entered. Ferreira then sued Gray Cary for malicious prosecution. (*Ibid.*)

■ The Court of Appeal held that despite Ferreira's trial victory, he did not obtain a favorable termination because the matter was settled. (*Ferreira, supra,* 87 Cal.App.4th at p. 413.) The court reasoned that because of the potential chilling effect of malicious prosecution actions, "its requirements must be strictly enforced. [Citation.] The fact that a settlement occurs after trial as opposed to earlier in the proceeding does not change the essential fact that the litigation *terminated* as the result of the parties' agreement and not based on the merits of the action. We recognize that cases are settled for a variety of reasons; however, where both sides give up anything of value in order to end the litigation, a party cannot later claim he received a favorable termination. [Citations.] It is not necessary to analyze the particular circumstances of the settlement or to examine the motivations of the parties—a negotiated settlement not only creates an ambiguity as to the merits of the underlying action, it is entirely inconsistent with bringing a further lawsuit for malicious prosecution. [Citation.]" (*Id.* at pp. 413–414.)

Here, the Court of Appeal did not challenge *Ferreira*'s reasoning or result. Instead it distinguished *Ferreira* because, procedurally, the parties in that case agreed to a new disposition and an *amended judgment.* Ultimately that amended judgment, not the jury verdict, ended the litigation. Conversely, Siebel and Christoffers accepted different rights and obligations between themselves, but did not stipulate to a new judgment. The agreement to abandon their appeals allowed the *existing* judgment to become final. The Court of Appeal reasoned that, although the settlement agreement compromised certain awarded amounts, the judgment itself, favoring Siebel, remained intact. The court also declined to extend *Ferreira.*

Defendants challenge the attempt to distinguish *Ferreira.* They rely on the *Ferreira* court's statement that "[i]t is not necessary to analyze the particular circumstances of the settlement or to examine the motivations of the parties—a negotiated settlement not only creates an ambiguity as to the merits of the underlying action, it is entirely inconsistent with bringing a further lawsuit for malicious prosecution." (*Ferreira, supra,* 87 Cal.App.4th at p. 414.) They urge *Ferreira* was not based on whether the original judgment was left intact, but focused on whether "both sides gave up something of value to resolve the matter." (*Id.* at p. 413.) Defendants assert that both sides here relinquished something valuable to end the litigation. They compromised certain awards to avoid the costs and uncertainty of their appeals.

The Court of Appeal's analysis is correct. Adopting defendants' position would foreclose a malicious prosecution action whenever a case is resolved by agreement. Such a conclusion would run counter to the policy favoring negotiated dispositions. A blanket rule could also bar legitimate malicious prosecution actions, allowing unscrupulous parties and/or their attorneys to

hide behind its shield. "The action for malicious prosecution is a recognition of the right of an individual to be free from unjustifiable litigation. . . . [¶] The purpose of the action is to compensate a wronged individual for damage to his reputation and to reimburse him for the expense of defending against the unwarranted action. [Citation.]" (*Cowles v. Carter* (1981) 115 Cal.App.3d 350, 354 [171 Cal.Rptr. 269].)

██ Here, after a jury trial, Siebel received a favorable judgment on the merits of the claims brought against him. If the parties had not appealed, Siebel would have secured a favorable termination because the judgment " 'reflect[ed] the merits of the action and [Siebel's] innocence of the misconduct alleged in the lawsuit.' [Citation.]" (*Casa Herrera, supra*, 32 Cal.4th at p. 342.) During the pendency of their appeals, the parties reached a settlement that did not amend the judgment on the merits as it related to Siebel. Siebel should not be penalized for reaching a settlement with Christoffers in the underlying action. Although the dollar amount Christoffers received from SSI was compromised, this amount related to the merits of the action between Christoffers and the company. The underlying judgment for Siebel on the merits was unaffected.[3] Because Siebel received a favorable judgment in the underlying proceeding and settled without giving up any portion of the judgment in his favor, we hold that the parties' settlement constitutes a favorable termination. (See *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 215–216 [12 Cal.Rptr.3d 786] (*HMS Capital*);[4] see generally *Casa Herrera, supra*, 32 Cal.4th at pp. 341–342; *Crowley v. Katleman, supra*, 8 Cal.4th at pp. 684–685.)

Cases relied upon by defendants are inapposite. For example, in *Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 827 [50 Cal.Rptr.2d 13] (*Dalany*), a pretrial settlement resulted in a stipulated judgment. A pretrial settlement obviates an adjudicated judgment on the merits.

---

[3] The parties' settlement agreement provides, "Nothing in this Agreement is intended to modify, or does modify, the final termination of the Action entered in favor of Siebel for purposes of pursuing claims against Buell or Mittlesteadt, or otherwise prevent Siebel from pursuing any claims against Buell or Mittlesteadt that he may have related to the Judgment in this Action."

[4] In *HMS Capital*, HMS prevailed over Lawyers Title at trial and the court entered judgment in its favor. (*HMS Capital, supra*, 118 Cal.App.4th at p. 208.) The judgment "left open a space for the amount of costs to be awarded to HMS, which was to be determined later." (*Ibid.*) The parties reached a settlement on the costs and a stipulation was entered reflecting their agreement. The trial judge "amended the judgment by interlineation to include a $7,906.36 costs award." (*Id.* at p. 209.) In a subsequent malicious prosecution action brought by HMS, Lawyers Title argued that HMS did not receive a favorable termination because the underlying judgment was entered upon stipulation. The trial court rejected this argument and the Court of Appeal affirmed. The court held that because HMS's costs were ancillary to the merits of the litigation, "the settlement and the resulting stipulation did not relate to the merits of the parties' dispute." (*Id.* at p. 215.)

Thus, generally there is no favorable termination, because there is nothing to reflect the malicious prosecution plaintiff's innocence on the merits. (See *Casa Herrera, supra*, 32 Cal.4th at pp. 341–342.) Our case is limited to a postjudgment settlement by the parties that does not fundamentally change the parties' relationship established by the underlying judgment on the merits.

Defendants' reliance on *Casa Herrera, supra*, 32 Cal.4th 336, is likewise misplaced. There, we noted that a favorable termination does not occur simply because a party has prevailed regardless of the reason for success. (*Id.* at p. 342.) A termination unrelated to the merits fails to show the innocence of the defendants in the underlying action. (*Ibid.*) We gave examples of such instances and cited *Dalany, supra*, 42 Cal.App.4th 822, for the general proposition that dismissals following settlement agreements would fall under this category. (*Casa Herrera*, at p. 342.) Our reference to *Dalany* shows this observation was made in the context of a pretrial settlement, which sets it apart from this case.

Further, statements made by the court in *Pender v. Radin* (1994) 23 Cal.App.4th 1807 [29 Cal.Rptr.2d 36] fail to assist defendants. In *Pender*, the court spoke in broad terms: "*Generally*, a dismissal resulting from a settlement does not constitute a favorable determination . . . ." (*Id.* at p. 1814, italics added.) However, in *Pender*, like *Dalany, supra*, 42 Cal.App.4th 822, the parties reached a pretrial settlement so the "litigation was terminated by agreement without regard to its merits" and could not be viewed as a favorable termination. (*Pender*, at p. 1814.)[5]

---

[5] Other cases defendants generally cite in support of their position are also not applicable. *Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1332–1333 [6 Cal.Rptr.2d 644] dealt with a pretrial settlement, thus not a judgment on the merits. *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135 [85 Cal.Rptr.2d 726] also involved a situation unlike the present case. *Graham* held that summary judgment in an underlying federal court action was a favorable termination for the Sierra Club even though a settlement had been reached in a related state action in New Mexico. The court held that the two actions were separate and that the settlement did "not cast a shadow of ambiguity on the federal judgment." (*Id.* at p. 1152.) *Pattiz v. Minye* (1998) 61 Cal.App.4th 822, 824 [71 Cal.Rptr.2d 802] held that dismissal of an action for failure to comply with discovery orders was not a favorable termination because the dismissal left doubt as to the liability or innocence of the prevailing party in the underlying action. Finally, in *Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.* (2003) 114 Cal.App.4th 906, 914 [8 Cal.Rptr.3d 199], the court held that Citi-Wide received a favorable termination because Golden Eagle signed a stipulation in the underlying action that the court termed a "surrender." The resolution was not a settlement because Golden Eagle admitted in a stipulation—signed on the eve of trial "when it learned it was in for a contest"—that its lawsuit lacked merit. (*Ibid.*) None of these cases address the facts and procedural context of this case, and our holding is consistent with them to the extent we focus on the malicious prosecution plaintiff's innocence in the underlying action. (*Casa Herrera, supra*, 32 Cal.4th at pp. 341–342.)

Defendants' remaining arguments are unpersuasive. They urge that the Court of Appeal's decision allows the defendant in an underlying action to implement a strategy to divide plaintiffs from their attorney. In addition to its chilling effect, defendants claim that such a situation would discourage settlements, increase malicious prosecution actions, and disrupt the attorney-client relationship.

To the contrary, our refusal to extend *Ferreira, supra,* 87 Cal.App.4th 409, to create a blanket rule will facilitate positive outcomes. It will allow for resolution of disputes *among litigants* on mutually satisfactory terms.[6] It will also discourage litigation by reaffirming the policy in favor of nonfrivolous actions. The attorney-client relationship and effective advocacy will not be impeded as long as an attorney provides sound counsel and does not encourage allegedly baseless lawsuits that subject either the attorney or client to a malicious prosecution action.[7]

A party filing a malicious prosecution action still faces strict requirements that should militate against an opening of the floodgates for this type of litigation. (See, *ante,* p. 740.) "Concerns over the potential chilling effect . . . are readily assuaged by stringent enforcement of the probable cause element of the malicious prosecution tort." (*Casa Herrera, supra,* 32 Cal.4th at p. 348.)[8] It is up to malicious prosecution plaintiffs to ensure that their lawsuits can survive the rigorous judicial scrutiny given to such actions.[9]

---

[6] We recognize that, in a postjudgment context, trial counsel and the client may find their interests in conflict. However, clients have no duty to refuse an otherwise legitimate settlement in order to protect their lawyer's divergent interest. Our decision encourages settlements in the postjudgment context. The fact that an attorney may not want to settle a case that is on appeal because the settlement may be *against the attorney's interests* should not outweigh the interests of the client.

[7] Defendants may be understood to argue that a postjudgment settlement that releases the client (Christoffers), but not the client's former attorneys (defendants), from malicious prosecution exposure should not, for public policy reasons, be deemed a favorable termination that would support a subsequent malicious prosecution action against the attorneys. These public policy considerations involve the basic fairness of such a one-sided settlement agreement, its effect on the attorney-client relationship, and the attorney's difficulty in defending against a malicious prosecution suit, particularly where, as here, the client agrees not to cooperate in the suit or, presumably, to waive the attorney-client privilege. These concerns may be serious. However, we conclude that questions concerning the enforceability of client-only releases, and any public policy defenses available to the attorneys in malicious prosecution actions under such circumstances, are not directly relevant to the narrow issue of favorable termination, and are thus beyond the scope of the holding in this case. They are more properly raised in proceedings below.

[8] We also described as "difficult" the burden of proof that a malicious prosecution plaintiff faces in actions emanating from criminal proceedings. (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 159 [114 P.2d 335].)

[9] Defendants also contend that they are not bound by the terms of an agreement to which they were not parties. Defendants claim that they only consented to a release of any obligation

## DISPOSITION

The Court of Appeal's judgment is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

---

that Siebel or SSI may have to pay their attorney fees. This argument is irrelevant to our discussion of whether Siebel received a favorable termination. Siebel does not argue, nor do we conclude, that the agreement itself imposed any obligations on defendants.