Filed 3/4/13  Glavinovich v. Catanzarite CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN L. GLAVINOVICH, | |
| Plaintiff and Appellant, | G046726 |
| v. | (Super. Ct. No. 30-2011-00516101) |
| KENNETH J. CATANZARITE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Steven L. Perk, Judge.  Affirmed.

Voss, Silverman & Braybrooke, David C. Voss, Jr., and Andrew T. Schoppe for Plaintiff and Appellant.

Catanzarite Law Corporation, Kenneth J. Catanzarite and Nicole M. Catanzarite-Woodward for Defendants and Respondents.

\*          \*          \*

This is one of a number of appeals from judgments after orders granting defense motions pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute,[2] in a malicious prosecution action by plaintiff John L. Glavinovich. All of the anti-SLAPP motions relate to the same underlying case, *Sweidan v. Orange County Physicians Investment Network, LLC* (Super. Ct. Orange County, 2013, No. 30-2009-00122142).

In this case, Glavinovich appeals the trial court's decision to grant the anti-SLAPP motion filed by defendants Kenneth J. Catanzarite and Catanzarite Law Corporation (collectively Catanzarite), one of the law firms involved in the underlying case. Based on the minimal, nonspecific evidence produced by Glavinovich in the trial court, he has not demonstrated that he can establish either a lack of probable cause or malice, two of the three requirements to maintain a cause of action for malicious prosecution. We therefore affirm the trial court's decision to grant the anti-SLAPP motion.

I

FACTS

A. *The Underlying Case*

Orange County Physicians Investment Network (OCPIN) was a Nevada limited liability company formed by Glavinovich and approximately 19 others. Its primary purpose was as a holding company for its members' funds to be used for the acquisition of stock in a company called Integrated Healthcare Holdings, Inc. (Integrated). This company, an investment entity, purchased four hospitals in the Orange County area from Tenet Healthcare Corporation.

---

[1] Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

In April 2008, Glavinovich was elected as a manager of OCPIN, along with Anil V. Shah, who had held that position since 2005. According to Glavinovich's complaint, acquiring Integrated stock was a "complicated and difficult affair," resulting in separate litigation that is apparently still arguing.

In early 2009, certain members of OCPIN began an effort to remove Shah and Glavinovich as managers. Glavinovich later alleged such actions were illegitimate and interrupted OCPIN's business operations. The dissident members (the OCPIN plaintiffs) then instituted the underlying case (the OCPIN litigation).

The OCPIN litigation began in April 2009, and the OCPIN plaintiffs filed a first amended complaint in June. The first amended complaint alleged causes of action against Glavinovich for breach of fiduciary duty, constructive fraud, injunction, professional negligence, accounting, and several declaratory relief claims. According to Catanzarite's later declaration in support of the instant motion to strike,[3] the factual allegations were based on Glavinovich's acts as a comanager of OCPIN. He was also a licensed insurance agent with the agency that placed the OCPIN directors and officers liability coverage. OCPIN was intended to contribute $30 million in capital to purchase Integrated shares.

Catanzarite's declaration stated that he had learned that Shah had pledged to loan OCPIN $20 million and directed the issuance of a private placement memorandum to attract additional investors. The memorandum claimed Shah had, in fact, loaned $20 million to OCPIN, but this was false. OCPIN only contributed $15 million to the share purchase which resulted in a loss of 40 percent of the shares it originally held.

Disputes developed thereafter between Integrated's management and Shah, resulting in a lawsuit by Integrated filed in May 2007. Litigation was also initiated by

---

[3] Glavinovich did not include the first amended complaint in the record on appeal.

OCPIN. OCPIN tendered Integrated's case against Shah to its insurance carrier (the policy had been purchased through the agency where Glavinovich was licensed), but the carrier denied coverage. It deemed Integrated as a subsidiary and therefore excluded claims by it from coverage, a conclusion Shah and Glavinovich did not, apparently, contest. Without coverage, defending Shah would result in substantial costs. They received a legal opinion in November 2007 that Shah's rights to indemnity from OCPIN would be limited to 10 percent of his expenses.

In September and October 2008, Glavinovich and Shah made two cash calls "with repriced units" to OCPIN members, which were intended to fund Shah's defense and indemnity. According to Catanzarite, these cash calls ignored the legal opinion regarding Shah's defense, did not disclose that a settlement of the Integrated litigation was imminent, and further failed to inform the members that their interest in OCPIN might be diluted.

In March 2009, Catanzarite's declaration stated, OCPIN's members were asked to execute settlement agreements without reading them. They were given signature pages and informed that time was of the essence. They were unaware that Shah was purportedly being released for any damages associated with his statement that he never had the capacity to loan $20 million to OCPIN, as well as matters related to his indemnity. The settlement agreements were signed on March 25, 2009. After the agreements were signed, the OCPIN members learned for the first time that the interests of the members who had not contributed to the cash calls were significantly diluted.

The disposition of the first amended complaint is not completely clear, but a second amended complaint was filed in November 2009. Various demurrers to that complaint were sustained with leave to amend. In March 2010, a third amended complaint was filed. According to Catanzarite's declaration, Glavinovich's demurrer and

motion to strike that complaint was only partly successful.[4]  He was ordered to file an answer, which he did on May 17, 2010.

On August 12, Catanzarite moved to withdraw from the case.  That motion was granted on September 10.  While that was pending, on August 19, Glavinovich filed a motion seeking judgment on the pleadings.  Catanzarite was substituted out of the case while that motion was still pending.  Ultimately, Glavinovich's demurrer to the sixth amended complaint was sustained, with the court noting that the OCPIN plaintiffs had not "com[e] even close" to stating a cause of action against him.

## B.  *The Malicious Prosecution Case*

After he was dismissed from the OCPIN litigation, Glavinovich filed the instant action for malicious prosecution against the OCPIN plaintiffs and their attorneys in the underlying case.  The first amended complaint, filed in December 2011, alleged malicious prosecution and intentional infliction of emotional distress.

In response, the defendants, including Catanzarite, filed anti-SLAPP motions.  Catanzarite argued the claims against Glavinovich in the OCPIN litigation "were based upon probative facts of his misconduct."  Catanzarite argued they relied upon facts reported to them by the OCPIN plaintiffs and their own investigation when filing the case.  They also argued that Glavinovich could not establish malice as a matter of law.

In opposition, Glavinovich argued that the depositions of two of the plaintiffs, taken in Feburary 2010, "conclusively demonstrate that neither they nor any other plaintiff in that litigation had any facts at all to support their claims against Glavinovich.  Again and again, when asked for facts which tended to support their claims

---

[4] The order, or any document revealing the basis for the court's decision, is not included in the record.

. . . the plaintiffs have no response other than to allege that their attorney — Mr. Catanzarite — possessed such knowledge."

With respect to malice, Glavinovich's entire argument follows: "Glavinovich can and will prove this element by showing that the [causes of action] and other factually unsupported claims were in fact rooted in their desire for greater control of the OCPIN entity itself, as evidenced in the highly-contentious proceedings of the April 2009 shareholder meeting repeatedly referenced in all of the Underlying Complaints and even in these moving papers. While greater control of a business entity may be a legitimate end, bringing baseless and legally untenable lawsuits in order to obtain such control is not a legitimate means to that end."

The court heard the anti-SLAPP motion on February 24, 2012. The court granted the motion, concluding that the lawsuit was indeed a SLAPP, and that Glavinovich had not established a prima facie case of either malicious prosecution or intentional infliction of emotional distress.[5] Glavinovich now appeals.

II

DISCUSSION

A. *Statutory Framework*

The anti-SLAPP statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage

---

[5] Glavinovich does not address his intentional infliction of emotional distress claim on appeal, and we therefore deem it abandoned.

6

of the case.  (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2.)  The statute is to be "construed broadly."  (§ 425.16, subd. (a).)

Section 425.16, subdivision (e), specifies the type of acts included within the statute's ambit.  An "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

Courts engage in a two-step process to resolve anti-SLAPP motions.  "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute.  (§ 425.16, subd. (b)(1).)'"  (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.)

"'If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]"  (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.)  To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123), thereby demonstrating his case has at least minimal merit.

(*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105 (*Cole*).) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) Glavinovich "must produce evidence that would be admissible at trial. [Citation.]" (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

On appeal, we "review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court. [Citation.]" (*Cole*, *supra*, 206 Cal.App.4th at p. 1105.) In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

The first step of the anti-SLAPP analysis is readily satisfied here, as it is in nearly all claims for malicious prosecution. (See *Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at pp. 734-735.) "It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition. [Citations.] ""[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action."'" [Citations.]" (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087.) "Under these accepted principles, a cause of action arising from a defendant's alleged improper filing of a lawsuit may appropriately be the subject of a section 425.16 motion to strike. [Citation.] The essence of the [plaintiffs'] malicious prosecution claim is that the plaintiff in the underlying action . . . filed litigation that was improper because it was allegedly filed with a malicious motive and without probable cause. This claim

8

'aris[es] from' the defendant's constitutionally protected petitioning activity, and therefore is subject to the anti-SLAPP statute. [Citation.]" (*Id.* at p. 1087-1088; *see also Cole*, *supra*, 206 Cal.App.4th at p. 1105.) We therefore turn to the question of whether Glavinovich has established the requisite probability of prevailing on his claim.

### B. Malicious Prosecution

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. [Citation.]" (*Soukup, supra,* 39 Cal.4th at p. 292.)

We examine the evidence produced in the trial court to determine if Glavinovich's claim passes muster under the anti-SLAPP statute. The only evidence Glavinovich submitted were deposition excerpts from two of the OCPIN plaintiffs, the court transcript and notice of ruling relating to the sixth amended complaint, and the notice of ruling on the fourth amended complaint. In Meka's deposition,[6] he was asked questions such as "what fiduciary duties did those two doctors [Shah and Glavinovich] have?" The question was objected to on the grounds of attorney-client privilege, and Meka answered that he did not have information other than what his attorney had told him. When asked for facts underlying the fiduciary duty claims, he repeatedly answered that he only knew what his counsel, Kenneth Catanzarite, had told him. Questions regarding other claims were answered similarly, and Sweiden answered in a consistent manner.

In support of the motion, Kenneth Catanzarite submitted his declaration, which included a lengthy explanation of the facts he had learned from his investigation of

---

[6] Glavinovich repeatedly refers to Meka and Sweiden as "lead plaintiffs" without any evidence that they had any special status in the litigation.

the case (recounted in significant part in part IA, *ante*). Catanzarite also included a number of exhibits, such as the OCPIN operating agreement.

### 1. *Favorable termination*

Catanzarite argues there was insufficient evidence the OCPIN litigation terminated in Glavinovich's favor. "To determine whether a party has received a favorable termination, we consider '"the judgment as a whole in the prior action . . . ." [Citation.]' [Citation.] Victory following a trial on the merits is not required. Rather, '"the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." [Citation.]' [Citation.]" (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 741.) Catanzarite argues that Glavinovich's successful demurrer to the sixth amended complaint did not demonstrate his innocence.

Catanzarite takes the Supreme Court's words here a bit too literally. A case resolved on demurrer almost never establishes a plaintiff's "innocence." Rather, a sustained demurrer reflects the inability to successfully plead facts sufficient to state a cause of action. Glavinovich's successful demurrer to the sixth amended complaint sufficiently spoke to the merits of the case as to satisfy the requirement of favorable termination.

### 2. *Probable Cause*

"Probable cause exists when a lawsuit is based on facts reasonably believed to be true, and all asserted theories are legally tenable under the known facts." (*Cole, supra,* 206 Cal.App.4th at p. 1106.) Whether the facts known to an attorney constituted probable cause to prosecute an action is a question of law. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 971.) More specifically, "'[t]he presence or absence of probable cause is viewed under an objective standard applied to the facts upon which the defendant acted in prosecuting the prior case. [Citation.] The test of determining probable cause is whether any reasonable attorney would have thought the claim to be tenable. [Citation.] . . . [¶] Hence, "probable cause to bring an action does not depend on it being meritorious, as

10

such, but upon it being *arguably tenable,* i.e., not so completely lacking in merit that no reasonable attorney would have thought the claim tenable. [Citation.]"' [Citation.] Probable cause exists if the claim is legally sufficient and can be substantiated by competent evidence. [Citation.]" (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 448-449.)

Glavinovich bears the burden of establishing a prima facie case. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) His argument on this point in his opening brief is sparse. It primarily consists of the following. "As illustrated in the above-cited excerpts from the depositions of lead OCPIN Defendant Meka, neither Meka nor any other OCPIN Defendant had probable cause to bring any of their claims against Glavinovich. This includes the 'cash call'-related claims cited by the Court in its order granting the motions to strike filed by Hewitt & Wolensky and Syed Naqvi, and extends to the other claims—for breach of fiduciary duty, fraud, misrepresentation, constructive fraud, professional negligence, etc. — which were alleged in the OCPIN Defendants' Second through Sixth Amended Complaints, and which Catanzarite claims to have based his theories. [¶] In view of the fact that the OCPIN Defendants and Catanzarite in particular, since he was allegedly the only person with knowledge of the facts supporting the OCPIN Defendants' claims against Glavinovich, had merely to reveal some portion of the facts which were allegedly known only to Catanzarite in order to survive the demurrers which eventually extinguished their claims against Glavinovich, it is even more reasonable to infer that those facts never existed in the first instance, and that the claims alleged against Glavinovich were assuredly 'based upon suspicion, imagination, speculation, surmise, conjecture or guesswork.'"

Even giving the most favorable reading possible to the deposition testimony of Meka and Sweidan, Glavinovich's reliance on these excerpts as the key evidence of a lack of probable cause is misplaced. These deposition excerpts only demonstrate what those two plaintiffs knew and understood at the time their depositions were taken. There

is no legal basis for attributing their knowledge, or lack thereof, to all other OCPIN plaintiffs. Glavinovich cannot and does not prove or even create any reliable inference that Meka and Sweidan were Catanzarite's only source of information. There were other plaintiffs, and as Catanzarite's declaration stated, he performed other research, such as reviewing the relevant OCPIN operating agreement.

Further, Glavinovich's reliance on the deposition testimony of two plaintiffs does not speak to the relevant standard applied to *attorneys* in malicious prosecution actions, specifically, "'whether any reasonable attorney would have thought the claim to be tenable.'" (*Antounian v. Louis Vuitton Malletier*, *supra*, 189 Cal.App.4th at pp. 448-449.) Indeed, Glavinovich submitted no evidence on this point. As a matter of law, Glavinovich has not established a lack of probable cause.

*3. Malice*

Even if we had found that Glavinovich established probable cause, he must also demonstrate a prima facie case supporting the last element of a malicious prosecution action, malice. "The 'malice' element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494 (*Downey Venture*).)

Glavinovich argues that malice can be inferred from nothing more than the lack of probable cause, but the lack of probable cause alone is insufficient. (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 452.) Were it otherwise, the malice requirement would simply disappear. "A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack of probable cause must be supplemented by other, additional evidence." (*HMS Capital,*

12

*Inc. v. Lawyers Title Co., supra,* 118 Cal.App.4th at p. 218.) "Merely because the prior action lacked legal tenability, as measured objectively (i.e., by the standard of whether any reasonable attorney would have thought the claim tenable [citation]), *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence." (*Downey Venture*, *supra*, 66 Cal.App.4th at p. 498, fn. omitted.)

"[T]hat evidence must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued defendant. [Citation.]" (*Downey Venture*, *supra*, at pp. 498-499; see also *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 225.) While malice may be inferred from circumstantial evidence such as the lack of probable cause, such evidence must be "supplemented with proof that the prior case was instituted largely for an improper purpose." (*Cole*, *supra*, 206 Cal.App.4th at p. 1114.)

Moreover, we keep in mind that malicious prosecution is a "disfavored action." (*Leonardini v. Shell Oil Co*. (1989) 216 Cal.App.3d 547, 566.) "[T]he elements of [malicious prosecution] have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872.) We are therefore entirely disinclined to read out the malice requirement from a malicious prosecution cause of action, as Glavinovich would have us do.

The evidence is completely insufficient to establish a prima facie case of malice against Catanzarite.[7] Unlike *Zamos*, *supra*, 32 Cal.4th 958, a case upon which he

---

[7] For the first time in his reply brief, Glavinovich argues that Catanzarite "aided and abetted" the malicious prosecution of the other defendants, and was therefore equally

relies, the evidence presented to the trial court does not demonstrate Catanzarite had knowledge of any lack of probable cause. The only evidence offered by Glavinovich in addition to pleadings and court rulings, the 2010 depositions of two plaintiffs, are simply insufficient on this point. In contrast, Catanzarite submitted evidence in the form of a declaration, stating why the firm believed the case had sufficient cause to proceed. Glavinovich has failed to meet his burden to demonstrate malice, and therefore the probability of success on his malicious prosecution claim. Thus, Catanzarite's anti-SLAPP motion was properly granted by the trial court.

## III

## DISPOSITION

The judgment is affirmed. Pursuant to section 425.16, subdivision (c)(1), Catanzarite may file the appropriate motion for attorney fees with the trial court. Catanzarite is also entitled to costs on appeal.

MOORE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

IKOLA, J.

---

liable. "Aiding and abetting a tort requires knowingly assisting the wrongful act. [Citation.]" (*Cole*, *supra*, 206 Cal.App.4th at p. 1106.) Glavinovich does not offer any evidence of aiding and abetting other than Catanzarite's participation in the underlying case.