Filed 4/12/16  Le Feuvre v. DH & MA Investments CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRIS LE FEUVRE, | B261840 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC099782) |
| v. | |
| DH & MA INVESTMENTS, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County. Russell S. Kussman, Judge.  Affirmed.

TamerLawCorp, and Steven M. Tamer for Plaintiff and Appellant.

Zakariaie & Zakariaie, and Niloufar Zakariaie for Defendants and Respondents.

_____

A commercial tenant filed an action against his landlord alleging causes of action for malicious prosecution, abuse of process, and related claims arising from underlying unlawful detainer proceedings, as well as a cause of action for breach of contract involving an option to extend the lease agreement. The trial court granted the landlord's special motion to strike the unlawful detainer related causes of action under the anti-SLAPP statute (Code Civ. Proc., § 425.16)[1] and denied the motion as to the cause of action for breach of contract. The tenant then initiated this appeal seeking to reinstate his unlawful detainer related claims. We affirm the anti-SLAPP order.

## FACTS

### *The Lease Agreement*

In April 2007, plaintiff and appellant Chris Le Feuvre and defendant and respondent DH & MA Investments, LLC (hereafter DHMA), the owner of a commercial property on Ventura Boulevard in Sherman Oaks with nightclub facilities, executed a lease agreement for the property. The lease agreement provided that Le Feuvre would lease the Ventura Boulevard property for five years, commencing at the close of escrow of his purchase of the business operating at the property. On July 13, 2007, escrow for the purchase of the business closed, fixing the lease start date and setting its expiration as July 13, 2012.

The lease agreement granted Le Feuvre an option to extend the lease period by an additional five years, provided he exercised the option at least six months prior to the lease expiration date, meaning that he had to exercise the option on or before January 13, 2012. Facts concerning Le Feuvre's attempt to exercise the option are discussed in more detail below. For present purposes, we note that DHMA asserted in various contexts at

---

[1] All further undesignated section references are to the Code of Civil Procedure unless otherwise noted.

2

different times that Le Feuvre did not attempt to exercise the option to extend the lease until February 4, 2012, about three weeks too late.[2]

### DHMA's Unlawful Detainer Action Based on Alleged Unpaid Rent

Beginning around the Spring of 2012, with the July 2012 expiration of the lease approaching, DHMA began raising claims that Le Feuvre was failing to pay his rent when it became due. On May 21, 2012, DHMA served Le Feuvre with a three-day notice to pay back-due rent or quit the property. (See § 1161.) The notice stated that Le Feuvre had failed to pay rent which was "due [for the period] from April 15, 2012 through May 15, 2012." As we will develop from this point onward, the May 12, 2012 three-day notice underpinned Le Feuvre's complaint for damages that DHMA eventually challenged under the anti-SLAPP statute, and it is a dominant element of this appeal.

DHMA filed an unlawful detainer action against Le Feuvre alleging that he had failed to pay his rent when due.

A review of the record shows the subsequent trial unfolded as follows: DHMA presented a witness to prove up its unlawful detainer complaint, Le Feuvre made an oral motion to dismiss DHMA's action, and the court granted the motion. Other than a copy of a minute order showing the dismissal, we see nothing in the record showing anything of certainty about the reason for the dismissal of DHMA's unlawful detainer action. There are assertions in the briefs filed in the current appeal — and that is all they are, assertions — to this effect: DHMA says the unlawful detainer court dismissed its action because of a procedural defect in DHMA's three-day notice, which DHMA says amounted to a scrivener's error in setting forth the dates for which Le Feuvre did not pay rent. Le Feuvre says the court dismissed DHMA's action upon finding the landlord's three-day notice was "unfounded," which we take to mean that the court found that Le Feuvre had, in fact, paid the rent which DHMA had claimed was unpaid. In any event,

---

[2] Eventually, in the second of two unlawful detainer actions between the parties, the trial court agreed with DHMA, and ruled that Le Feuvre did not timely exercise the option to extend the lease.

3

the apodictic fact is that DHMA's unlawful detainer action was dismissed in December 2012.

***Le Feuvre's Action for Damages, the anti-SLAPP Motion and the Current Appeal***

Two months after the court dismissed DHMA's unlawful detainer action as described above, Le Feuvre filed a complaint for damages against DHMA.[3] Thereafter, Le Feuvre filed a First Amended Complaint (complaint) alleging five causes of action, listed respectively: malicious prosecution, abuse of process, intentional infliction of emotional distress, violation of the Unfair Competition Law (UCL; see Bus. & Prof. Code, § 17200), and breach of contract. Le Feuvre's complaint alleged that DHMA wrongly served the May 2012 three-day notice based on an alleged failure to pay when the claimed rent had been paid, and then wrongly litigated the underlying unlawful detainer action that terminated with a dismissal. Further, the complaint alleged that Le Feuvre exercised his option to extend the lease in a timely and proper fashion, and that DHMA's failure to acknowledge the extension of the lease caused him to suffer money damages, including the loss of his business.

DHMA filed a special motion to strike Le Feuvre's entire complaint pursuant to the anti-SLAPP statute. In support of its motion, DHMA filed a request for judicial notice of an unlawful detainer judgment for possession of the Ventura Boulevard property which DHMA obtained in April 2013 in a second unlawful detainer action that it had filed against Le Feuvre. DHMA argued in the anti-SLAPP motion that Le Feuvre's claims against the landlord arose from the landlord's protected litigation activity in the first unlawful detainer action, and that Le Feuvre could not prevail on his claims because DHMA was protected against any liability from the first unlawful detainer action by the litigation privilege (see Civ. Code, § 47), and DHMA had probable cause, and did not act with malice, in pursuing its first unlawful detainer action, as evidenced by the fact that it won a judgment in its second unlawful detainer action.

---

**3** Our references to DHMA hereafter include its two principals, defendants and respondents Michael Abaian and Delaram Hanookai.

4

Le Feuvre filed opposition to DHMA's anti-SLAPP motion. Le Feuvre supported his opposition with a declaration from his lawyer, Steve Tamer. Attorney Tamer's declaration cited to three exhibits: (1) DHMA's May 2012 three-day notice underlying the landlord's first unlawful detainer action; (2) a ledger showing that Le Feuvre made his rent payments through April 2012; and (3) a negotiated check dated April 16, 2012.

In reply papers, DHMA submitted evidentiary objections to attorney Tamer's declaration based on lack of foundation. Further, DHMA submitted a further request for judicial notice, including a request to take notice that the trial court granted a series of requests for admissions (RFAs) against Le Feuvre in September 2013 his current action for damages against DHMA. The record shows that at the time DHMA served the RFAs, and at the time they were later deemed admitted, Le Feuvre was a self-represented litigant.

The trial court entered a minute order granting DHMA's request for judicial notice and granting its anti-SLAPP motion as to Le Feuvre's first through fourth causes of action, leaving only Le Feuvre's cause of action for breach of contract remaining. The court's minute order shows it found that Le Feuvre's first through fourth causes of action were based on the service of an incorrect three-day notice and prosecution of the first unlawful detainer action, which was protected litigation activity, and that Le Feuvre had failed to show a probability that he would prevail on his causes of action.

Le Feuvre filed a timely notice of appeal.

## DISCUSSION

### I. The Anti-SLAPP Striking Procedure

The anti-SLAPP statute is intended to protect against meritless lawsuits that are filed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The statute accomplishes this end by establishing a special procedure for striking meritless, chilling causes of action at the earliest possible stages of litigation. The statute requires two steps for striking a cause of action.

5

In the first step, the court must determine whether the moving defendant has made a threshold showing that a challenged cause of action "aris[es] from protected activity." In this step, a moving defendant must demonstrate that the acts upon which the plaintiff's claim is based were taken in furtherance of the defendant's right of petition or free speech under the federal or state Constitutions. (See generally *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) When the court finds this threshold step has been established by the moving defendant, the burden shifts to the plaintiff, and the court must determine whether the plaintiff has demonstrated a "probability of prevailing" on his or her claim. (See generally *Equilon, supra,* 29 Cal.4th at p. 67.) The court may strike a cause of action under the anti-SLAPP statute only when both steps are satisfied. (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1218.)

An appellate court reviews an order granting an anti-SLAPP motion under the de novo standard of review, meaning we will employ the same two-step procedure as did the trial court. (*Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 537.)

## II. Protected Activity

Le Feuvre contends the trial court erred in granting DHMA's anti-SLAPP motion because DHMA failed to show that Le Feuvre's causes of action alleged claims arising from the landlord's "protected activity." We disagree.

A claim arises from protected activity when the defendant's acts giving rise to the plaintiff's cause of action actually involved an exercise of the right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) This means more than that the plaintiff filed his or her lawsuit "in response to" a defendant's acts. (*Ibid.*) The defendant must demonstrate that the plaintiff's cause of action is actually based on the defendant's conduct in exercise of protected constitutional rights. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1002 (*ComputerXpress*).) In determining whether the first step has been established, a court must consider the pleadings and any supporting and opposing affidavits stating the facts upon which alleged liability is based. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

6

Le Feuvre argues his claims do not arise from DHMA's exercise of its constitutional right to petition because DHMA was no longer engaged in protected activity "once [it] realized that [Le Feuvre] had paid the rent upon which the [three-day] notice and [unlawful detainer] lawsuit were based[,]" that is, the rent due for April to May 2012. As stated by Le Feuvre: "Despite having knowledge that the rent had been paid and vitiated the three-day notice, [DHMA] prosecuted the unlawful detainer lawsuit for several weeks thereafter, resulting in dismissal by the unlawful detainer court within 10 minutes of having commenced the trial . . . ." The remainder of Le Feuvre's arguments discuss the elements of a cause of action for malicious prosecution, and the defense of the litigation privilege.

Le Feuvre has failed to persuade us to find the trial court erred in determining that he sued DHMA for engaging in "protected activity." The question whether Le Feuvre sued DHMA for engaging in protected activity is not dependent upon whether there was substantive merit to DHMA's underlying unlawful detainer proceedings. Le Feuvre's arguments here are better-suited to a discussion of whether or not he showed that he had a probability of prevailing on his claims. In the first step of the anti-SLAPP motion, the focus is on the nature of the defendant's underlying conduct. Here, a party landlord, initiating and prosecuting unlawful detainer proceedings. We agree with the Court of Appeal's conclusion in *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 (*Feldman*) that "'[t]he prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16.'" (*Id.* at p. 1479, citing *Birker v. Lam* (2007) 156 Cal.App.4th 275, 281 and *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735.) Further, we agree with *Feldman*'s conclusion that "[s]ervice of the three-day notice to quit . . . [is] also protected activity within the meaning of section 425.16 . . . " because "[s]ervice of a three-day notice to quit [is] a legally required prerequisite to the filing of the unlawful detainer action. [Citations.]" (*Feldman, supra,* at p. 1480.)

7

Nothing in Le Feuvre's brief persuades us that DHMA's actions giving rise to Le Feuvre's current case were not protected activity by their nature. We agree with DHMA that Le Feuvre's opening brief on appeal "jumbles" the two parts of the anti-SLAPP motion procedure. For this reason, he has not addressed the protected activity step persuasively.

## III. Probability of Prevailing

The second step of the anti-SLAPP statute procedure requires the plaintiff to show that he has a reasonable probability of prevailing. A court is required to apply a "'summary-judgment-like'" test in addressing an anti-SLAPP motion (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714), accepting as true the evidence favorable to the plaintiff and evaluating the defendant's evidence only to determine whether the defendant has defeated the plaintiff's claims as a matter of law. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823, disapproved on other grounds in *Equilon, supra*, 29 Cal.4th at p. 68, fn. 5.) A court may not weigh credibility or compare the weight of the evidence, but rather, its single task is to determine whether the plaintiff has made a prima facie showing of facts to support his or her cause of action and which would sustain an unlawful detainer judgment in his favor. (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1010.)

To allege a cause of action for malicious prosecution, a plaintiff must plead that the prior action (1) was commenced by or at the direction of the defendant; (2) was pursued to a legal termination in the plaintiff's favor; (3) was brought without probable cause; and (4) was initiated with malice. (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740.)

Le Feuvre contends he showed enough to survive DHMA's anti-SLAPP motion. We disagree. It is unnecessary to examine Le Feuvre's four causes of action separately on their respective merit. As a collective determination, we find Le Feuvre failed to show he has a winnable case on any theory or cause of action.

As noted above, the totality of Le Feuvre's evidence in opposition to DHMA's anti-SLAPP motion consisted of a declaration from his attorney with attached exhibits which included DHMA's May 2012 three-day notice, a ledger purporting to show Le

Feuvre's rent payments through April 2012, and a check dated April 16, 2012. Even if we gave full credit to Le Feuvre's evidence, it did not meet his burden of demonstrating a probability that he would win his case against DHMA. The evidence, such as it is, does not show a lack of probable cause for DHMA's underlying unlawful detainer action or that DHMA harbored malice in bringing its underlying lawsuit; it merely shows that DHMA's action was dismissed. The evidence he presents does nothing to show that Le Feuvre suffered any money or emotional distress damages. In order to defeat an anti-SLAPP motion it is not necessary for a plaintiff to put on his entire case as it would be presented at trial. But more was needed from Le Feuvre to show a prima facie case against DHMA than his offer of the three exhibits that were attached to his lawyer's declaration.

Beyond this, the record shows that, after DHMA lost his initial unlawful detainer action by a dismissal, the landlord promptly filed a second, and successful, unlawful detainer action. We see no evidence in the record to support Le Feuvre's assertion on appeal that DHMA filed the first unlawful detainer action, not for a proper unlawful detainer purpose, but to coerce Le Feuvre to pay higher rent for his lease. Further, as we discuss next, the record establishes that Le Feuvre stopped paying rent after April 2012, demonstrating that DHMA had proper reasons for pursuing unlawful detainer proceedings.

This brings us to an aspect of the case that is of equal importance to the shortcomings of Le Feuvre's evidentiary showing in support of his case against DHMA, namely, the trial court's ruling to grant the landlord's motion to deem certain RFAs to be admitted, including the following: (1) that Le Feuvre had no facts to support any of his causes of action (RFAs 22–25); that Le Feuvre breached the lease (RFA 20); that the lease was terminated on May 15, 2012 (RFA 4); that Le Feuvre failed to vacate the premises upon termination of the lease (RFA 3); that Le Feuvre was a holdover tenant (RFA 6); that Le Feuvre owed over $180,000 to DHMA in unpaid rent (RFA 11); that Le Feuvre damaged the premises in several different ways (RFA 12–17); and that Le Feuvre had no defenses to any claims asserted by DHMA (RFA 18). Given these admissions by

9

Le Feuvre, it simply cannot reasonably be said that he could prevail in his case against DHMA. The best that Le Feuvre offers with respect to the RFAs is a statement in his reply brief as follows: "Had it not been for the trial court granting [DHMA's] anti-SLAPP motion, effectively disposing of [my] case, [I] would have brought a motion to set aside the trial court's ruling deeming the requests for admissions admitted." The argument does not demonstrate that Le Feuvre had a probability of prevailing in his case against DHMA. Indeed, it implicitly concedes that, with the RFAs, he could not win his case.

## IV.     DHMA's Motion on Appeal to Strike Documents and for Sanctions

DHMA filed a motion on appeal to strike a number of documents included in the appellant's appendix submitted by Le Feuvre on appeal. We deny this motion as moot in light of our determination that the trial court correctly granted DHMA's anti-SLAPP motion.

DHMA's motion for sanctions against Le Feuvre and his counsel, attorney Steven Tamer, for the claimed improprieties with Le Feuvre's appendix on appeal is denied. We are not persuaded that the case before us is one in which we should exercise our judicial discretion to impose sanctions against a particular party.

### DISPOSITION

The anti-SLAPP order is affirmed. Respondents are to recover their costs on appeal, including their attorney's fees on appeal. (§ 425.16, subd. (c); *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc*. (2005) 129 Cal.App.4th 1228, 1267.) The amount of such fees may be determined by the trial court on remand.

                                                            BIGELOW, P.J.

We concur:


        RUBIN, J.                    FLIER, J.


10