[No. A053056. First Dist., Div. Three. Mar. 18, 1992.]

ROBERT R. VILLA, Plaintiff and Appellant, v.
RUFUS L. COLE et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

1328

**COUNSEL**

Meyer & Mitchell, Hayes, Meyer & Mitchell, Debra A. Hayes and Barbara M. Thomas for Plaintiff and Appellant.

Walter S. Moeller, Lorraine M. Walsh, Edward M. Chen, Ann Brick, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Diana L. Lee and Annette L. Hurst for Defendants and Respondents.

**OPINION**

**WHITE, P. J.**—Robert R. Villa appeals from a judgment entered upon the granting of the motion for summary judgment of respondents Rufus L. Cole and Raymond A. Seeterlin, and from an order granting respondent Cole's motion to compel production of documents and imposition of sanctions. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arose from an altercation between respondent Seeterlin and appellant Villa, a police officer employed by the City of Alameda (City), that

occurred at the time of Villa's attempt to administer a field sobriety test to the driver of an automobile in which Seeterlin was a passenger. As a result of this altercation, Villa arrested Seeterlin for drunk and disorderly conduct (Pen. Code, § 647, subd. (f).

*The Underlying Seeterlin Lawsuit*

Seeterlin retained respondent Cole, an attorney. In July 1987, Cole filed a lawsuit in Alameda County Superior Court on Seeterlin's behalf against the City, the Alameda Chief of Police, and two individual Alameda police officers, Officer James Alves and appellant Villa. The complaint alleged multiple causes of action against each of the defendants, including violation of civil rights, assault and battery, false arrest, and both intentional and negligent infliction of emotional distress. It sought general, compensatory and punitive damages, attorney fees and costs of suit, and an order directing the City to adopt an affirmative program of compliance with federal civil rights laws "in order to insure that all police officers for the [City] utilize the degree of force in their dealings with citizens which is consistent with and is not violative of the United States Constitution . . . ."

Villa was sued both in his official capacity as an Alameda police officer and in his individual capacity. Together with the other defendants, he was represented by Attorney R. Ashley Cohn, counsel for the City. The City bore all of the costs of Villa's representation.

In July 1988, Seeterlin's lawsuit was removed to the United States District Court for the Northern District of California, where it was assigned to Judge John P. Vukasin, Jr. In February 1990, respondent Cole sent Cohn a letter confirming an agreed schedule for depositions and discovery. Cole's letter also invited Cohn "to further discuss the possibility of settlement of this claim without the necessity of incurring further costs for discovery."

*Settlement of the Underlying Lawsuit*

In ensuing discussions and correspondence, Cole and Cohn discussed a proposed settlement under which Seeterlin would dismiss the action with prejudice in exchange for the City's waiver of its right to seek reimbursement for its litigation costs and attorney fees. On March 19, 1990, Cole wrote Cohn a letter reporting that Seeterlin had accepted Cohn's offer to waive costs of suit in exchange for Seeterlin's dismissal of his lawsuit. At the same time, Cole wrote a letter to Judge Vukasin reporting to the federal trial court that the "matter has been settled by the parties."

On March 21, 1990, Cohn advised Cole that "all of our clients have not agreed to the terms of the proposed settlement." The next day, Cole wrote

Cohn that Seeterlin had accepted the City's proposed settlement with the understanding that it was acceptable to all of Cohn's clients. Cohn in turn wrote Judge Vukasin a letter reporting that "the *proposed* settlement is not complete as one of the defendant police officers has not agreed to accept a dismissal in exchange for a waiver of fees and costs," and requesting a settlement conference "at the earliest possible time."

Thereafter, the parties arranged for a settlement conference before Judge Vukasin. Prior to the conference, Cohn outlined the terms of the proposed settlement in a letter to Cole dated April 17, 1990, stating: "This will confirm our agreement that this case will be resolved under the following terms and conditions:

"You will request that the Court enter an Order of Dismissal which dismisses the entire action, with prejudice, against all defendants. In exchange, the City agrees to waive its right to litigation costs and attorneys' fees on behalf of itself and all City employee individual defendants."

Cohn also submitted a settlement conference statement, arguing that the City had a right to settle the lawsuit on behalf of itself and Officer Villa despite the latter's disagreement, because the City had borne all the expense of Villa's indemnification and defense, and was arranging for the dismissal of the lawsuit with no actual or potential liability to Villa.

Present at the settlement conference on April 18, 1990, were Cohn and Alameda City Attorney Carol Korade for the defendants, individual police officer defendants Villa and Alves, and Attorney Cole on behalf of Seeterlin. Cohn stated that he appeared "on behalf of all defendants." Villa did not dispute this statement. Judge Vukasin stated on the record that the City had provided representation for all of the defendants and had borne all of the costs of litigating on their behalf; that Seeterlin and the City had agreed on a settlement; and that "Officer Villa's position is that he does not join in this settlement agreement or in the motion to approve the settlement." Villa acknowledged this as "correct." Officer Alves stated that he accepted the City's position. Villa did not dispute Judge Vukasin's statement that the City had represented him and had carried the full costs of his defense; he did not offer to release the City from its obligation to indemnify and represent him; and he did not propose holding the City harmless in exchange for the City's agreement not to require Seeterlin to dismiss the action and all claims against Villa.

Judge Vukasin confirmed with Attorneys Cohn and Cole "that the disposition is that the plaintiff [Seeterlin] will dismiss with prejudice, and the City, on behalf of the City and all defendants, is prepared to wa[i]ve costs

and fees." After both attorneys accepted the settlement terms on behalf of their respective clients, Judge Vukasin ruled as follows: "The City has provided the representation for Officer Villa, the City has agreed as attorney for Officer Villa to this disposition, and the City takes the position that it has the right to settle on his behalf even though he does not join in the motion pursuant to Government Code [section 825, subdivision (a)] of California. . . . [¶] This is a motion to approve the disposition and dismissal of the action, and the motion is granted." Thereafter, the court entered its order dismissing Seeterlin's action with prejudice, pursuant to the stipulation "entered into by the parties by and through their counsel of record . . . ."

*The Instant Malicious Prosecution Lawsuit*

Without taking any action to set aside the district court's order dismissing Seeterlin's lawsuit pursuant to the settlement, appellant Villa filed the present action against Seeterlin and Cole for malicious prosecution on June 11, 1990. Among other things, Villa's complaint alleged that he had "incurred costs and attorneys' fees in defending against [Seeterlin's] action," and it prayed for compensatory, special and punitive damages as well as attorney fees and costs. Seeterlin and Cole separately answered and filed motions for summary judgment, arguing that, as a matter of law, the settlement of the underlying action precluded Villa from establishing the favorable termination of that action in his favor.

In November 1990, Cole served his first set of interrogatories and a request for production of documents on Villa. Both the responses to the interrogatories and the production of documents were due in mid-December 1990. Despite two time extensions and a warning that further delay would prompt Cole to file a request for sanctions, Villa had still not responded to either the interrogatories or the request for production of documents by mid-January 1991. On January 16, 1991, Cole filed a motion to compel production of documents and responses to interrogatories, and a request for sanctions. Villa's untimely opposition to this motion, dated January 30, 1991, was accompanied by incomplete answers to Cole's first set of interrogatories. Villa's opposition claimed that he had already produced all unprivileged documents not already in Cole's possession. In fact, no documents had been produced prior to this or were produced at this time.

Cole's motion to compel responses to interrogatories and production of documents and request for sanctions was heard on February 5, 1991. The motion to compel responses to interrogatories was denied as moot on the ground that answers had been submitted with Villa's opposition; the motion to compel production of documents was granted; and the request for sanctions was granted, with sanctions set at $486. Compliance was ordered to

take place no later than February 19, 1991. However, Villa still did not comply; he did not produce any documents or pay the sanctions as ordered.

Meanwhile, in late January 1991, Villa filed two written objections to statements made in the declarations submitted in support of the motions for summary judgment: an objection to the citation of an unpublished appellate decision; and a hearsay objection to statements by Cole to the effect that Cohn represented Villa in the underlying litigation. The motions for summary judgment were heard on February 11, 1991. Following the hearing, the trial court sustained both of these objections, and overruled several objections by Cole and Seeterlin to declarations filed on Villa's behalf.[1] The trial court went on to grant the motions for summary judgment, finding that "[t]he undisputed evidence of earlier settlement, albeit over plaintiff [Villa]'s protest, does not provide the basis for plaintiff showing the earlier action terminated in his favor, and does not provide [a] basis for malicious prosecution."

Judgment was entered in favor of Seeterlin and Cole on March 19, 1991. Villa filed a notice of appeal from both the order of February 5, 1991, ordering production of documents and imposition of sanctions, and from the judgment on the order granting summary judgment.

## II. SUMMARY JUDGMENT

*Elements of Malicious Prosecution*

■ The tort of malicious prosecution originated as a remedy for individuals who have been the targets of unjustifiable and maliciously founded criminal charges. In California, as in most other common law jurisdictions, the tort has been extended to afford a remedy for the malicious institution of civil proceedings. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 431, pp. 512-514.) In both its forms, however, the tort traditionally has been and still is regarded as a disfavored cause of action, on account of its tendency to impose a " 'chilling effect' " on the willingness of

---

[1]Villa contends that the trial court impermissibly considered inadmissible evidence in ruling on the motions for summary judgment. In support of this contention, he cites only his two written objections to the citation of the unpublished appellate decision and to Cole's declaration statements about Cohn's representation of Villa. In a somewhat confusing argument, he asserts that the trial court "impliedly overruled" these objections; or alternatively that, even if it did sustain them, "it is not clear that the court disregarded" the subject evidence. The argument is completely meritless. The trial court explicitly sustained *both* of Villa's objections as part of its order sustaining the motions for summary judgment. There is absolutely no basis whatsoever for Villa's assertion that the trial court relied on this evidence in its consideration of the motions for summary judgment.

ordinary citizens either to report criminal conduct or to bring potentially valid civil claims to court. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at pp. 872-874; *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 847-848 [92 Cal.Rptr. 179, 479 P.2d 379]; *Norton* v. *Hines* (1975) 49 Cal.App.3d 917, 922 [123 Cal.Rptr. 237].)

■ The essential elements of the tort are the same in both the criminal and the civil contexts. In every case, in order to establish a cause of action for malicious prosecution a plaintiff must plead and prove that the prior proceeding, commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at pp. 871-872; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 431, pp. 513-514.) Of these three elements, both of the motions for summary judgment in this case placed in issue *only* that of whether there was a termination of the underlying action favorable to Villa.

*Settlement Does Not Constitute Favorable Termination*

■ In order for the termination of the lawsuit to be considered "favorable" to the malicious prosecution plaintiff, it must be reflective of the merits of the action and of the plaintiff's innocence of the misconduct alleged therein. In most cases, a voluntary unilateral dismissal is considered a termination in favor of the defendant in the underlying action; the same is true of a dismissal for failure to prosecute. (*Lackner* v. *LaCroix* (1979) 25 Cal.3d 747, 749-751 [159 Cal.Rptr. 693, 602 P.2d 393]; *Minasian* v. *Sapse* (1978) 80 Cal.App.3d 823, 827 [145 Cal.Rptr. 829]; *MacDonald* v. *Joslyn* (1969) 275 Cal.App.2d 282, 289 [79 Cal.Rptr. 707, 35 A.L.R.3d 641]; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 440, pp. 523-524; cf. *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 185 [156 Cal.Rptr. 745].)

On the other hand, a resolution of the underlying litigation that leaves some doubt as to the defendant's innocence or liability is *not* a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff. Thus, a dismissal resulting from negotiation, settlement or agreement is generally not deemed a favorable termination of the proceedings. (*Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 794, fn. 9 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083]; *Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 151-152 [114 P.2d 335, 135 A.L.R. 775]; *Warren* v. *Wasserman, Comden & Casselman* (1990) 220 Cal.App.3d 1297, 1301-1302 [271 Cal.Rptr. 579]; *Oprian* v. *Goldrich, Kest & Associates* (1990) 220 Cal.App.3d

337, 343-344 [269 Cal.Rptr. 429]; *Haight v. Handweiler* (1988) 199 Cal.App.3d 85, 88-89 [244 Cal.Rptr. 488]; *Weaver v. Superior Court, supra,* 95 Cal.App.3d at pp. 184-185.) The purpose of a settlement is to *avoid* a determination on the merits. "In such a case the dismissal reflects ambiguously on the merits of the action as it results from the joint action of the parties, thus leaving open the question of defendant's guilt or innocence. (See Prosser, Law of Torts (4th ed. 1971) § 119, p. 840.)" (*Minasian v. Sapse, supra,* 80 Cal.App.3d at p. 827, fn. 4.)

■ Villa argues that the underlying lawsuit was settled over his protest and objections, and that he did not participate therein. He contends that the settlement actually operated as a voluntary unilateral dismissal of himself by Seeterlin, and was thus a favorable termination on the merits. However, even where a defendant does not agree to a settlement made on his behalf, his or her dismissal from the lawsuit pursuant to that settlement will not be viewed as a favorable termination as long as it was a necessary condition *to* achievement of the overall settlement. Such a dismissal is not considered unilateral because it was required by the terms of a settlement agreement, and it will act as a bar to a later malicious prosecution action by the nonsettling defendant. (*Haight v. Handweiler, supra,* 199 Cal.App.3d at pp. 88-89.)

That is the situation in this case. As appellant concedes, the terms of the settlement between the City and Seeterlin required the dismissal of all the defendants, including Villa. The City could not realize the benefits of settling the litigation with Seeterlin unless the action against Villa was simultaneously terminated. Otherwise, the City would continue to be exposed to potential liability on Villa's behalf, both for defense and for indemnification, and would therefore still be a participant in the litigation, contrary to its aims in settling with Seeterlin and his attorney. In short, Seeterlin dismissed Villa from the lawsuit because it was necessary to effect the settlement with the City. Such a termination does not necessarily reflect Seeterlin's opinion that his action against Villa lacked merit, and thus does not qualify as a favorable termination for purposes of a malicious prosecution action. (*Haight v. Handweiler, supra,* 199 Cal.App.3d at pp. 88-89.)

*City's Representation of Villa*

■ Villa asserts that the City could not settle on his behalf and could not claim to represent him because he never requested such representation. The contention is without merit. A party may not voluntarily accept the benefits of a settlement negotiated and accepted on the party's behalf by an attorney, and at the same time disavow the settlement to the extent it is against his or

her perceived interests. (*Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698, 704 [488 P.2d 637, 49 A.L.R.3d 828]; *Alvarado Community Hospital* v. *Superior Court* (1985) 173 Cal.App.3d 476, 480-481 [173 Cal.App.3d 476, 219 Cal.Rptr. 52]; *City of Fresno* v. *Baboian* (1975) 52 Cal.App.3d 753, 756-760 [125 Cal.Rptr. 332]; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 89, pp. 89-90.)

Here, Villa accepted all the benefits of the City's representation of him, and of the settlement that terminated the lawsuit against him. He did not express any objection to the fact that the City had assumed all the costs of his defense; he did not offer to reimburse the City for his pro rata share of litigation expenses; and he never offered to hold the City harmless for the costs he would incur in continuing to defend the lawsuit on his own. In short, while accepting the benefits of his dismissal, Villa did nothing to set aside or repudiate the settlement of which that dismissal was a part. On this basis, the City clearly could not assume that Villa would forego later claiming the right to reimbursement and indemnification from the City for any attorney fees, litigation costs, or damages he incurred in further defense of Seeterlin's action. In order to protect itself against further litigation, the City was entitled to provide for Villa's representation and also to require his dismissal as part of the overall settlement. Villa may not now disavow that settlement, having effectively ratified it by accepting its benefits.

*Seeterlin's Motivations for Settlement*

■ Appellant Villa would have us inquire into the parties' motivations in settling the underlying lawsuit. In particular, he argues that we must look behind the settlement to see if Cole and Seeterlin sought to terminate the litigation because they did not think it could be won.

This argument wrongly confuses the elements of probable cause and favorable termination. "Whether a prior action was legally tenable goes to the issue of probable cause, that is, did the defendant have an honest and reasonable belief in the truth of the allegations. [Citation.] Whether a prior action was terminated favorably tends to show the innocence of the defendant in the prior action [citations], and is not affected by the objective tenability of the claim. In short, these two elements of the malicious prosecution tort serve different purposes, and the legal tenability of the underlying action is not the standard by which to judge whether the action was terminated in [the malicious prosecution plaintiff]'s favor. The standard . . . is simply whether the termination bears on the merits of the underlying action." (*Warren* v. *Wasserman, Comden & Casselman, supra*, 220 Cal.App.3d at p. 1303.)

In the instant case, the motions for summary judgment were not based on the alleged failure of the probable cause element; instead, they focused solely on the element of favorable termination. The only question was whether or not, on the undisputed evidence, Villa could show that there had been a legal termination of the Seeterlin lawsuit in his favor. The legal tenability of the underlying action is irrelevant to the issue of whether the litigation was terminated favorably to the interests of the malicious prosecution plaintiff. (*Warren v. Wasserman, Comden & Casselman, supra,* 220 Cal.App.3d at pp. 1301-1303.) For the reasons discussed, Villa could not prove a legal termination favorable to him, because the litigation terminated by agreement without regard to its merits. (*Oprian v. Goldrich, Kest & Associates, supra,* 220 Cal.App.3d at p. 343-344.)

*Consideration*

██ Similarly, the actual amount or subjective value of the consideration given by Seeterlin as part of the settlement agreement to the City and its codefendants, including Villa, is immaterial to any consideration of whether Villa can show a termination of the lawsuit in his favor. Just as "the fact of settlement says nothing about a defendant's liability, his nonliability, his freedom from fault, or his culpability" (*Zalta v. Billips* (1978) 81 Cal.App.3d 183, 190 [144 Cal.Rptr. 888]), so is the *amount* of a settlement absolutely irrelevant to the merits of a lawsuit. ██ ██ ██ This is because a litigant's decision to settle, and what to accept in settlement, may well be based on a variety of factors completely unrelated to the actual issues in the case, such as his or her ability to continue to finance litigation; disagreements over strategy; a desire to avoid the time and inconvenience of trial; the relative benefits from a potential victory versus the tangible and intangible costs of the efforts necessary to win; psychological factors of stress and anxiety; and unwillingness to gamble on the outcome of trial. (Cf. *Oprian v. Goldrich, Kest & Associates, supra,* 220 Cal.App.3d at pp. 343-344.)[2]

*Policy Favoring Settlements*

██ Moreover, it is a well-established public policy in this state that settlements of litigation are favored and should be encouraged. (*Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d at pp. 872-874; *Potter v. Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 602 [234 P.2d 16]; *City of Los Angeles v. Superior Court* (1986) 176 Cal.App.3d 856, 866 [222 Cal.Rptr. 562].) Our adoption of Villa's argument would run counter to this

---

[2]In any event, a waiver of fees and costs in return for dismissal does in fact confer a valuable consideration on a settling plaintiff. (*Armstrong World Industries, Inc. v. Superior Court* (1989) 215 Cal.App.3d 951, 957 [264 Cal.Rptr. 39].)

important public policy by actually discouraging such settlements. "It would be a sad day indeed if a litigant and his or her attorney could not dismiss an action to avoid further fees and costs, simply because they were fearful such a dismissal would result in a malicious prosecution action. It is common knowledge that costs of litigation, such as attorney's fees, costs of expert witnesses, and other expenses, have become staggering. The law favors the resolution of disputes. 'This policy would be ill-served by a rule which would virtually compel the plaintiff to continue his litigation in order to place himself in the best posture for defense of a malicious prosecution action.' [Citation.]" (*Oprian* v. *Goldrich, Kest & Associates, supra,* 220 Cal.App.3d at pp. 344-345.)

## Conclusion

Seeterlin and his counsel, Cole, agreed to dismiss the complaint against Villa as part of an overall settlement agreement with the City. The dismissal was the result of agreement and was not on the merits. Villa accepted the benefits of both the City's representation of him during the litigation, and the termination of the lawsuit as a result of the settlement and dismissal. Accordingly, Villa did not establish that the underlying cause of action terminated in his favor, and the motions for summary judgment were properly granted.

### III. DISCOVERY ISSUES*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. DISPOSITION

The judgment is affirmed. The order imposing sanctions is affirmed. Respondents shall recover their costs on appeal.

Merrill, J., and Chin, J., concurred.

---

*See footnote, *ante,* page 1327.