Filed 8/31/21  Trombetta v. Patterson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| A. PETER TROMBETTA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRADLEY A. PATTERSON, et al.,<br><br>    Defendants and Appellants. | A158897<br><br>(Sonoma County<br>Super. Ct. No. SCV-263398) |

Defendants and appellants Bradley Patterson, Harry O'Hagin, Lawyers Group International LLP ("LGI"), and Martin Cohn (individually and doing business as Cohn, Stewart & Associates) appeal from the denial of their special motion to strike plaintiff and respondent A. Peter Trombetta's action against them under Code of Civil Procedure section 425.16,[1] commonly known as the anti-SLAPP statute.

Appellants argue that Trombetta's claims for malicious prosecution and unlawful business practices, which are based partly on appellants' filing of a cross-complaint against him in a prior case, arose from their protected petitioning activity and that Trombetta failed to carry his burden of showing a probability of prevailing on the merits as to those claims.  They claim they

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

are entitled to attorney fees and costs because they should have prevailed. We affirm the order denying the special motion to strike.

## FACTUAL AND PROCEDURAL BACKGROUND

We draw our facts from the allegations in the complaint and the evidence submitted to the trial court.

Background Leading to Case No. SCV-252696

Harry O'Hagin was married to Carolina O'Hagin and they had a company involved in manufacturing roofing products called O'Hagin's, Inc. (OHI).[2] Around 2002, Harry, Carolina, and their attorney, William Daniels, met with Patterson, an attorney, and Bryan Gaggs, a certified public accountant. Patterson and Gaggs proposed that Harry, Carolina, and OHI use an "offshore tax structure" that would reduce their domestic tax obligations by diverting income to offshore bank accounts maintained by a foreign entity called Charter Star Limited, which was a Hong Kong corporation owned by Patterson and Gaggs. Gaggs told Carolina that she would have to expatriate to properly participate. Carolina and OHI declined, but Harry agreed and expatriated to Thailand.

Harry filed for divorce from Carolina around 2003. Harry and Carolina eventually entered a "marital settlement agreement" whereby OHI would pay Harry $10 million, while Harry agreed to convey all community-held intellectual property to Carolina as separate property. OHI paid $500,000 to Harry, but not the remainder, so Harry elected to enforce the settlement agreement and obtained a judgment against OHI for $9.5 million plus about $1.1 million in prejudgment interest in October 2008, in Sonoma County Superior Court case no. SCV-238447.

---

[2] To avoid confusion due to shared last names, hereafter we refer to Harry and Carolina by their first names only.

2

Over the years, OHI made payments to Harry for consulting fees, royalties, and portions of the aforementioned judgment. OHI believed it was making these payments to a company in Thailand that Harry owned, Jalerm Industries, Inc. (hereafter Jalerm Thailand). Patterson and Gaggs instructed OHI not to withhold taxes from these payments because Harry, a U.S. citizen, wholly owned Jalerm Thailand. Over time, however, Patterson and Gaggs instructed OHI to pay various "Jalerm owned" accounts, without disclosing that neither Harry nor Jalerm Thailand maintained these accounts. Instead, a similarly named company, Jalerm Industries Ltd., a Hong Kong corporation (hereafter Jalerm Hong Kong) maintained the accounts. Patterson and Gaggs set up Jalerm Hong Kong, which was owned by Charter Star Limited, the Hong Kong corporation owned by Patterson and Gaggs.

Around June 2012, Carolina and OHI discovered that payments to Harry from around 2003 to 2012 were not being made to Jalerm Thailand or Harry, but to Jalerm Hong Kong. Believing OHI should have withheld and paid taxes to the Internal Revenue Service and the California Franchise Tax Board, OHI stopped making payments owed to Harry and sued him, Patterson, Gaggs, Charter Star Limited, Jalerm Hong Kong, and Jalerm Thailand, in the Superior Court of Sonoma County, case no. SCV-252696, seeking indemnification for federal and state tax liabilities and declaratory relief. OHI essentially alleged that the defendants tricked OHI into not withholding taxes.

The Cross-Complaint in Case No. SCV-252696

Represented by Patterson of LGI and Cohn of Cohn, Stewart & Associates, Harry filed a cross-complaint in case no. SCV-252696 in April 2013, and a first amended cross complaint in October 2013. The first

3

amended cross-complaint named many cross-defendants, including OHI, Carolina, Daniels, William Daniels, Limited, William B. Daniels II, P.C., Twin Concord Enterprises Limited (Twin Concord), and three newly formed companies related to OHI—namely, O'Hagin Heavy Metal Maintenance LLC (HMM), O'Hagin Sheet Metal Fabrication LLC (SMF), and O'Hagin Manufacturing LLC. The first amended cross-complaint also named attorneys of these cross-defendants as cross-defendants themselves, including Trombetta, who was representing Daniels, William Daniels, Limited, William B. Daniels II, P.C., Twin Concord, and the three newly formed companies related to OHI in case no. SCV-252696.[3] This cross-complaint alleged four causes of action against all cross-defendants, including Trombetta: (1) fraudulent transfers to defraud a creditor; (2) constructive fraudulent transfers to defraud a creditor; (3) fraudulent concealment; and (4) breach of fiduciary duty. In short, the cross-complaint alleged OHI owed Harry about $16 million for the judgment in case no. SCV-238447, and the cross-defendants transferred, or assisted in transferring, OHI's assets to Twin Concord and the three newly formed companies related to OHI in order to avoid paying Harry. The attorneys were sued on the theory that the complained of transfer of assets could not have occurred without the assistance of legal counsel.

---

[3] OHI had previously hired Trombetta from around 2009 to 2011, in part to keep it apprised of the status and consequences of the marital dissolution proceedings and to review the judgment in case no. SCV-238447. During this time, Trombetta did some work for Carolina in connection with a motion to compel in the dissolution matter.

Other attorneys sued as cross-defendants in SCV-252696 included: Philip Kelly, who represented OHI in case no. SCV-238447; Robert Montgomery, who represented Carolina in the marital dissolution matter; and Mitchell Greenberg and Stephanie Walker, who were Trombetta's cocounsel in representing OHI in case no. SCV-252696.

4

Harry and Gaggs' Lawsuit against Trombetta and Daniels

After Trombetta subpoenaed financial records for Patterson, Harry, Gaggs, Charter Star Limited, and Jalerm Hong Kong in case no. SCV-252696 in November 2013, Harry and Gaggs also filed a separate lawsuit against Trombetta and Daniels for abuse of process in Sonoma County Superior Court case no. SCV-254711. Trombetta and Daniels prevailed on their anti-SLAPP motion in that case.

The Settlement in Case No. SCV-252696

At a hearing in April 2015 in case no. SCV-238447, counsel for OHI and Carolina, on the one hand, and Patterson appearing on behalf of Harry, on the other, announced they reached a settlement that would also resolve the multiple actions between them. Among other things, these parties indicated they agreed to amend the judgment Harry obtained against OHI in case no. SCV-238447 to $6.5 million, and to add Carolina plus the three new OHI related entities—O'Hagin HMM, O'Hagin SMF, and O'Hagin Manufacturing—as judgment debtors. They also agreed to dismiss various related actions, including the complaint and the cross-complaint in case no. SCV-252696.

The trial court asked the parties present in the courtroom whether they understood and assented to the settlement. Carolina indicated her assent, as did Daniels. Patterson indicated his assent on behalf of himself and Gaggs, Harry, Charter Star Limited, and Jalerm Hong Kong. When the court turned to counsel for Trombetta and several other attorneys, counsel stated: "we did not participate in the settlement discussions. It is our understanding that each of the parties that I am here representing are being dismissed with prejudice, but none of the parties are being asked to provide mutual releases

5

or to waive any rights which they may still retain after the dismissal with prejudice." (Capitalization omitted.)

Nearly a year later, in March 2016, the trial court issued an amended judgment in case no. SCV-238447, and related cases such as case no. SCV-252696, reflecting many of the terms discussed at the April 2015 hearing, including: Harry's agreement to amend the judgment to a total of $6.5 million; the addition of Carolina and the three new OHI related entities as judgment debtors; and Harry's agreement to dismiss his cross-complaint with prejudice as to all cross-defendants. The judgment further indicated that Carolina, Daniels, OHI, the three OHI related companies, Harry, Patterson, Gaggs, Jalerm Hong Kong, and Charter Star Limited agreed to release and forever discharge each other from any and all claims based on acts or omissions that occurred prior to April 3, 2015.

Over a year later, in October 2017, Patterson, on behalf of Harry, filed the request to voluntarily dismiss Trombetta with prejudice from the cross-complaint.

The Present Action

In 2018, Trombetta sued appellants alleging a cause of action for malicious prosecution based on appellants' naming of Trombetta as a cross-defendant in the cross-complaint in case no. SCV-252696. Trombetta claimed he and other attorneys and advisors were all named as cross-defendants in order to intimidate Carolina, OHI, and their advisors, and to dissuade any cooperation with domestic authorities investigating the tax evasion scheme. Trombetta also alleged a cause of action for unlawful business practices (Bus. & Prof. Code, § 17200), claiming the tax evasion scheme was an unlawful business practice, as was appellants' prosecution of frivolous, fraudulent, and

6

vexatious legal actions—such as the cross-complaint in case no. SCV-252696—to conceal the tax fraud scheme.

Patterson—acting as counsel—filed an anti-SLAPP motion on behalf of all the appellants. Trombetta opposed it, and the trial court denied it.

## DISCUSSION

The anti-SLAPP statute authorizes a special motion to strike claims arising from any act in furtherance of the person's constitutional right of petition or free speech "in connection with a public issue." (§ 425.16, subd. (b)(1).) As used in section 425.16, such acts include: "(1) any written or oral statement or writing made before a . . . judicial proceeding . . . , [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e).)

Resolution of an anti-SLAPP motion involves two steps. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) This second step inquiry is a " 'summary-judgment-like procedure.' " (*Ibid.*) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim *as a matter of law*." (*Id.* at pp. 384–385, italics added.) Claims with "minimal merit" may proceed. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94.) "In making its determination, the court shall

7

consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b)(2).)

We review a ruling on an anti-SLAPP motion de novo.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

**A.  The Malicious Prosecution Claim**

The first step of the anti-SLAPP inquiry is not disputed by the parties, and we agree it is satisfied.  (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215.)  Therefore, we proceed to the second step:  Did Trombetta carry his burden of establishing a probability of success?  "To establish a cause of action for malicious prosecution, a plaintiff must demonstrate that the prior action (1) was initiated by or at the direction of the defendant and legally terminated in the plaintiff's favor, (2) was brought without probable cause, and (3) was initiated with malice."  (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740 (*Siebel*).)  To obtain monetary relief, a malicious prosecution plaintiff must also prove damages.  (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1411 (*Sycamore Ridge*).)  We examine these elements in turn.

### 1.  Favorable Termination

#### (a)  General Principles

"To determine whether a party has received a favorable termination, we consider ' "the judgment as a whole in the prior action . . . ." [Citation.]' [Citation.]  Victory following a trial on the merits is not required.  Rather, ' "the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." ' "  (*Siebel*, *supra*, 41 Cal.4th at p. 741.)  " ' "[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record 'to see if the disposition reflects the opinion of the court or the

8

prosecuting party that the action would not succeed.' " [Citations.]'

[Citation.] 'Should a conflict arise as to the circumstances of the termination,

the determination of the reasons underlying the dismissal is a question of

fact.' " (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1399.)

"In most cases, a voluntary unilateral dismissal is considered a

termination in favor of the defendant in the underlying action . . . ." (*Villa v.

Cole* (1992) 4 Cal.App.4th 1327, 1336 (*Villa*).) Indeed, "[a] voluntary

dismissal is *presumed* to be a favorable termination on the merits, unless

otherwise proved to a jury." (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at

p. 1400, italics added.) This presumption " ' "arises from the natural

assumption that one does not simply abandon a meritorious action once

instituted." ' " (*Ibid.*; see *Roche v. Hyde* (2020) 51 Cal.App.5th 757, 770 ["a

unilateral dismissal raises a presumption of favorable termination" and the

circumstances of the dismissal must be evaluated "[t]o determine whether the

presumption has been rebutted"].)

That said, courts have distinguished between unilateral dismissals and

dismissals resulting from settlement. (See, e.g., *Villa*, *supra*, 4 Cal.App.4th

at pp. 1335–1336.) For example, where parties negotiate a settlement and

both sides give up something of value to end the litigation, the dismissal

cannot support the element of favorable termination because it creates only

ambiguity as to the merits of the underlying action. (*Ferreira v. Gray, Cary,

Ware & Freidenrich* (2001) 87 Cal.App.4th 409, 413–414.) In cases where

certain parties reach a settlement, a nonsettling defendant's "dismissal from

the lawsuit pursuant to that settlement will not be viewed as a favorable

termination *as long as it was a necessary condition to achievement of the

overall settlement. Such a dismissal is not considered unilateral because it

was required* by the terms of a settlement agreement, and it will act as a bar

9

to a later malicious prosecution action by the nonsettling defendant." (*Villa*, *supra*, 4 Cal.App.4th at p. 1336, italics added.)

For instance, in *Villa*, *supra*, 4 Cal.App.4th 1327, an arrestee sued a city, the police chief, and two police officers, including Villa. (*Villa*, at p. 1331.) The city's attorney acted as counsel for all the defendants, and the city was obligated to indemnify Villa, to represent him, and to bear the costs of his representation. (*Id.* at pp. 1331–1332.) Villa, who was in the courtroom when the settlement agreement was announced and acknowledged as correct the city attorney's statement that he appeared " 'on behalf of all defendants,' " objected to the settlement. (*Id* at p. 1332.) Nevertheless, the federal district court dismissed the action "with prejudice, pursuant to the stipulation 'entered into by the parties by and through their counsel of record . . . .' " (*Id.* at p. 1333.)

Villa subsequently sued the arrestee for malicious prosecution. (*Villa*, *supra*, 4 Cal.App.4th at p. 1333.) The trial court entered summary judgment in favor of the arrestee on the ground that Villa could not show the earlier action terminated in his favor based on the prior settlement. (*Id.* at p. 1334.) The Court of Appeal affirmed, applying the rule that "even where a defendant does not agree to a settlement made on his behalf, his or her dismissal from the lawsuit pursuant to that settlement will not be viewed as a favorable termination as long as it was a necessary condition to achievement of the overall settlement." (*Id.* at p. 1336.) The court explained: "*As* [*Villa*] *concedes*, the terms of the settlement between the City and [the arrestee] *required the dismissal* of all the defendants, including Villa. The City could not realize the benefits of settling the litigation with [the arrestee] unless the action against Villa was simultaneously terminated. Otherwise, the City would continue to be exposed to potential liability on Villa's behalf . . . . In

10

short, [the arrestee] dismissed Villa from the lawsuit because it was necessary to effect the settlement with the City. Such a termination does not necessarily reflect [the arrestee's] opinion that his action against Villa lacked merit, and thus does not qualify as a favorable termination for purposes of a malicious prosecution action." (*Ibid.*, italics added.)

In *Haight v. Handweiler* (1988) 199 Cal.App.3d 85 (*Haight*), Haight, represented by attorney Gergen, sued one Dr. Godes, represented by attorney Handweiler, for medical malpractice. (*Haight*, at p. 87.) The jury rendered a verdict for Godes after Haight's expert gave unfavorable testimony. (*Ibid.*) Godes then sued Haight, Gergen, and their expert for malicious prosecution. (*Ibid.*) The expert settled for $37,500, and Gergen offered to settle for the same amount "in exchange for the dismissal of both Gergen and Haight." (*Ibid.*) Haight did not authorize the dismissal, but learned of it when the settlement was finalized, after Gergen's attorney tried to get him to sign a release of future claims. (*Ibid.*) Haight then sued Godes and Handweiler for malicious prosecution. (*Ibid.*) At trial, the issue of favorable termination was tried first, and judgment was rendered against Haight. (*Ibid.*)

On appeal, Haight argued he did not agree to the settlement so the termination should be treated as a voluntary dismissal, i.e., a termination in his favor. (*Haight, supra*, 199 Cal.App.3d p. 89.) The Court of Appeal disagreed, explaining the focus of the favorable termination inquiry was not on Haight's opinion of his own innocence, but on the opinion of Godes. (*Ibid.*) The court then explained that the determination of the reasons underlying Godes's dismissal of Haight was a question of fact and that substantial evidence supported the trial court's conclusion that Haight's dismissal was necessary to effectuate the settlement. Namely, essentially undisputed testimony was presented that "[Gergen's attorney] insisted on Haight's

11

dismissal as a condition of settlement because he wanted to protect Gergen from future cross-complaints"; that Handweiler advised Godes to dismiss Haight because Gergen would not settle otherwise and because $75,000 was reasonable compensation for the damage Godes suffered; and that Godes authorized the dismissal based on Handweiler's advice and to achieve the settlement. (*Ibid.*)

In spite of the foregoing, we take a moment to note there is no categorical rule that a favorable termination can never be found when a case is terminated by settlement. Indeed, the California Supreme Court has indicated such a categorical rule is inappropriate. (*Siebel*, *supra*, 41 Cal.4th at p. 742 .) So while case law supports a *general* rule that termination pursuant to settlement is not considered favorable for purposes of malicious prosecution (*Haight*, *supra*, 199 Cal.App.3d at p. 88), exceptions may arise. (See, e.g., *Siebel*, *supra*, 41 Cal.4th at p. 743.)

### (b) Analysis

We now turn to appellants' main contention, which is that the underlying action was not terminated in Trombetta's favor because Trombetta was dismissed pursuant to a settlement agreement. Starting from the premise that Trombetta's dismissal was necessary to that settlement, appellants argue the dismissal does not reflect on the merits of the case or otherwise indicate Trombetta's innocence of the misconduct alleged in the cross-complaint. In making this argument, appellants rely heavily on *Villa*, *supra*, 4 Cal.App.4th 1327.

The case at hand, however, is materially distinguishable from *Villa*. In that case, Officer Villa, the malicious prosecution plaintiff, *conceded* that the settlement in a prior action between the City of Alameda (Villa's employer and codefendant) and Seeterlin (the arrestee who sued the city and Villa) was

12

contingent on Villa's dismissal. (*Villa*, *supra*, 4 Cal.App.4th at p. 1336.) Specifically, because the city was obligated as Villa's employer to represent and indemnify him in Seeterlin's lawsuit, the city "could not realize the benefits of settling the litigation with Seeterlin unless the action against Villa was simultaneously terminated." (*Ibid.*) Accordingly, the settlement did not reflect a termination favorable to Villa because, as Villa acknowledged, the city required his dismissal from the lawsuit "to effect the settlement." (*Ibid.*) Trombetta makes no similar concession here, however, and neither Trombetta nor his attorney participated in the settlement negotiations in case no. SCV-252696. More to the point, there is no evidence that the settling cross-defendants, such as OHI and Carolina, made the settlement with Harry contingent on Trombetta's dismissal. Without such evidence, the fact remains that the cross-claims against Trombetta were voluntarily dismissed with prejudice.

This case is also distinguishable from *Haight*. In *Haight*, "essentially undisputed" evidence was presented during trial that Gergen, who was sued along with Haight in the prior action, made settlement in the prior action contingent on the dismissal of Haight, who would later become the malicious prosecution plaintiff. (*Haight*, *supra*, 199 Cal.App.3d at pp. 87, 89.) But as already stated, here there is no *evidence* in the record that the settling cross-defendants, such as OHI and Carolina, *required* the dismissal of Trombetta, who did not participate in the settlement. While there is evidence that dismissal of the cross-complaint as to all cross-defendants was a term of the settlement, there is no evidence indicating how that term came to be. As the trial court observed, "[t]he record gives no direct discussion regarding the reasoning or why" Harry and the other appellants here dismissed the cross-

13

complaint against Trombetta and the others. Not every term in a contract is essential, and we cannot simply assume otherwise here.

Appellants *assert* that Trombetta's dismissal was "a necessary, and in fact required, condition to achievement of the overall settlement," but provide no record citations to *evidence* that cross-defendants, such as OHI and Carolina, who negotiated the settlement, required this. We have reviewed the record and found no such evidence. Patterson's declarations accompanying his moving and reply papers shed no light on the subject. Ultimately, without such evidence, the record provides no indication the dismissal of Trombetta with prejudice could not reflect a favorable termination in his favor.

Rejecting appellants' argument, however, does not end our discussion. Instead, we must examine the record and consider the judgment as a whole to determine if the disposition " ' " 'reflects the opinion of the court or the prosecuting party that the action would not succeed.' " ' "[4] (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1399.) Thus, we assess if Trombetta made a prima facie showing that his claims have minimal merit. (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 94.)

Here, we conclude Trombetta carried his burden. The evidence reflects that from around 2009 to 2011, OHI hired Trombetta, in part to keep it apprised of the status and consequences of the marital dissolution proceedings and to review the judgment in case no. SCV-238447. During this time, Trombetta did some work for Carolina in connection with a motion to compel in the dissolution matter. Then, in 2013, attorney Daniels hired Trombetta to represent Daniels and Daniels' company, and also to act as

---

[4]     Harry repeatedly claims he "prevailed" by achieving the goals of his cross-complaint but this ignores the test set out here.

14

cocounsel for O'Hagin HMM, O'Hagin SMF, O'Hagin Manufacturing and Twin Concord in connection with the cross-complaint in case no. SCV-252696. Trombetta was not named as a cross-defendant until the first amended cross-complaint was filed in October 2013, after Trombetta's first appearance as counsel in early September 2013. After Trombetta subpoenaed financial records for Patterson, Harry, Gaggs, Charter Star Limited and Jalerm Hong Kong in case no. SCV-252696, Harry and Gaggs filed a separate lawsuit against Trombetta and Daniels for abuse of process (case no. SCV-254711) that was dismissed after Trombetta and Daniels prevailed on their anti-SLAPP motion. In January and September 2014, Trombetta filed declarations in case no. SCV-252696 attesting he was hired solely as litigation counsel in the aforementioned matters, he never acted in a transactional capacity, and he had nothing to do with the alleged fraudulent transfers at the heart of the cross-complaint in case no. SCV-252696.

With regard to the circumstances surrounding the settlement, neither Trombetta nor his attorney participated in the settlement negotiations. The original judgment in case no. SCV-238447 was worth $9.5 million plus over $1.1 million in prejudgment interest; Harry's first amended cross-complaint alleged the amount due on that judgment was over $16 million; and Harry sought damages exceeding $15 million, punitive damages, and attorney fees and costs. And yet Harry settled case no. SCV-238447 and the various related cases, including case no. SCV-252696, for a *total* of $6.5 million.

In addition to the foregoing, Trombetta's declaration opposing the special motion to strike averred there is no evidence that he or any of the other attorneys named in the cross-complaint were involved in moving assets from OHI to the newly formed OHI related companies. Moreover, Trombetta asserted appellants named him as a cross-defendant to retaliate against him

15

for previously representing other cross-defendants in prior proceedings, and to intimidate and dissuade him from engaging in future representation of these parties and from discovering more information about appellants' tax fraud scheme.

The evidence, including the circumstances of the dismissal and terms of the underlying judgment, permits the reasonable inference that the allegations against Trombetta were groundless, and that the prosecuting parties—i.e., Harry and his attorneys—knew they could not prevail against Trombetta for the misconduct alleged and so dismissed him. (*Sycamore Ridge, supra*, 157 Cal.App.4th at p. 1399.) And as already discussed, none of the evidence shows, much less conclusively establishes, Trombetta's dismissal was a "necessary" term of the settlement required by the parties, such as Carolina and OHI, who negotiated the settlement. Again, there is no evidence concerning how that term came to be, and without such evidence, we cannot say the dismissal was not akin to a unilateral dismissal by appellants, or that it should defeat Trombetta's claim *as a matter of law*. (*Baral, supra*, 1 Cal.5th at pp. 384–385.)

In sum, Trombetta made a sufficient prima facie showing that the claims against him in case no. SCV-252696 were terminated in his favor.

### 2. Remaining Elements

Appellants contend Trombetta was unable to demonstrate the remaining elements of a malicious prosecution claim, i.e., malice and lack of probable cause.

"The 'malice' element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action, and past cases establish that the defendant's motivation is a question of fact to be determined by the jury." (*Sheldon Appel Co. v. Albert &*

16

*Oliker* (1989) 47 Cal.3d 863, 874.) "Whereas the malice element is directly concerned with the *subjective* mental state of the defendant in instituting the prior action, the probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted." (*Id.* at p. 878.)

Here, the evidence previously discussed supports the conclusion that appellants filed the cross-complaint against Trombetta without probable cause and with malice. In addition to the foregoing, we note Trombetta's declaration in opposition to the special motion to strike also averred that Patterson acknowledged naming the various attorneys including Trombetta as cross-defendants "because he had been sued by OHI as a [d]efendant in the [c]omplaint for unlawful activity." Additionally, even after settling the case in 2015 and telling the court they would dismiss Trombetta, appellants did not actually dismiss Trombetta from the action until late 2017. (See *Zamos v. Stroud* (2004) 32 Cal.4th 958, 970 [an attorney is liable "for the damages incurred from the time the attorney reasonably should have caused the dismissal of the lawsuit after learning it has no merit" and "can avoid liability by promptly causing the dismissal of, or withdrawing as attorney in, the lawsuit"].)

Appellants argue that Trombetta did not meet his burden at the second step of the anti-SLAPP inquiry because he did not produce additional "corroborating evidence" to support statements made in his declaration, such as statements denying any participation in the misconduct claimed against him in the cross-complaint. But appellants cite no authority indicating the

17

evidence Trombetta produced was insufficient. (See generally *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 949 [at the second stage, "the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial"]; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 [in assessing whether a plaintiff has shown a probability of prevailing, the court must " 'accept as true the evidence favorable to the plaintiff' "].)

Finally, appellants argue Trombetta failed to set forth evidence of any recoverable damages, aside from his expenditure of time, which is not recoverable. This is meritless.

"The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made . . . . The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees [citations], compensation for injury to his reputation or impairment of his social and business standing in the community [citations], and for mental or emotional distress [citation]." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50–51.)

Here, Trombetta's declaration claimed he sustained economic loss because he had to pay for litigation fees and costs, and he had to spend innumerable hours dealing with the case, substantially displacing his income. Also, he had to report the suit to his malpractice insurer, and his name now

18

appears on public documents as having been sued twice. This is prima facie evidence of recoverable harm, and appellants fail to point to any authority to the contrary.

In sum, Trombetta has carried his burden under the second step of the anti-SLAPP inquiry to demonstrate a probability of success as to his malicious prosecution claim and claim for damages.

## B. The Unlawful Business Practices Claim

Because Trombetta's cause of action for unlawful business practices appears to be a so-called "mixed cause of action," we preface our discussion by noting that "[w]hen relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at [the first stage of the anti-SLAPP inquiry]. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral*, *supra*, 1 Cal.5th at p. 396.)

With regard to the unfair business practices cause of action, the trial court indicated the complaint appeared to set forth two "different causes of action for unfair business practices." Specifically, some of the allegations were about appellants engaging in a tax fraud scheme, while other allegations concerned the malicious prosecution conduct underlying the first

19

cause of action, namely, appellants' use of litigation to harass, intimidate, and influence Trombetta and others similarly situated from bringing the alleged tax fraud scheme to light. The court indicated the former claim was not susceptible to attack under section 425.16 because it did not arise from protected activity, but the latter claim did fall within the purview of the statute. The court then found Trombetta provided evidence to demonstrate a probability of prevailing.

Neither party challenges the trial court's division of the unfair business practices claim into two separate unfair business practices, nor do they dispute that only the malicious prosecution allegations fall within the purview of the anti-SLAPP statute. We agree with the court's determinations. Because only the abusive litigation portion of the claim is based on protected activity, we consider whether Trombetta established that particular claim was legally sufficient and factually substantiated. (*Baral*, *supra*, 1 Cal.5th at p. 396.)

Appellants contend Trombetta failed to satisfy his burden because the litigation privilege in Civil Code section 47, subdivision (b) applies, and so Trombetta's sole remedy, they argue, is to proceed by way of his malicious prosecution cause of action. Relying on *Rubin v. Green* (1993) 4 Cal.4th 1187 (*Rubin*), appellants assert that Trombetta cannot recast his malicious prosecution claim as an unfair business claim.

"A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim." (*MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 183.) "The litigation privilege . . . provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual

20

formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) Moreover, the immunity offered by the litigation privilege cannot be circumvented by casting a claim as one for unlawful business practices. (*Rubin*, *supra*, 4 Cal.4th at pp. 1200–1204.)

Considering the foregoing, and the case law holding that filing of pleadings in a litigation are communicative acts that are protected by the litigation privilege (*Rubin*, *supra*, 4 Cal.4th at p. 1195), we conclude the litigation privilege applies to appellants' filing of their cross-complaint in case no. SCV-252696. Thus, Trombetta's claim—to the extent it is based on that filing—is not legally sufficient. In reaching this conclusion, we note Trombetta failed to respond to this argument in his brief. Nor did he point to any exception to the litigation privilege that might make this portion of his unfair business practices claim viable.

Under *Baral*, legally insufficient claims must be stricken, and "[a]llegations of protected activity supporting the stricken claim are eliminated from the complaint, *unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.*" (*Baral*, *supra*, 1 Cal.5th at p. 396, italics added.) Here, although the subject claim is legally insufficient, Trombetta has shown a probability of prevailing on his malicious prosecution claim. Therefore, while the alleged malicious prosecution of the cross-complaint in case no. SCV-252696 cannot serve as the basis for the

21

unlawful business practices claim, appellants are not entitled to have the allegations eliminated from the complaint. Instead, evidence of the alleged malicious prosecution may properly be considered by a jury when evaluating the merits of this claim. (See, e.g., *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1266–1267.)

Because we affirm the denial of the special motion to strike, we reject appellants' claim that they are entitled to attorney fees and costs because they should have prevailed on the anti-SLAPP motion.

We also reject Trombetta's request, in his respondent's brief, that we sanction appellants on the ground they filed this appeal for purposes of delay. Trombetta did not follow the procedure set out in California Rule of Court 8.276 for requesting sanctions, and in any event, we think Trombetta's proffered proof of appellants' improper purpose is insufficient.

Before concluding, we additionally note that Trombetta requests judicial notice of: (1) the 2012 judgment in the dissolution action between Harry and Carolina, which includes a copy of the marital settlement agreement; and (2) various federal district court documents concerning a shipping company named Sargeant Marine, Inc., that entered a guilty plea in 2020 to international bribery and money laundering via foreign shell companies. We deny these requests because Trombetta did not establish the relevance of these documents, and they are unnecessary to our resolution of the issues on appeal.

## DISPOSITION

The order of the trial court denying the anti-SLAPP motion is affirmed. Trombetta is entitled to costs on appeal.

22

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.

A158897/*Trombetta v. Patterson*

23